Walter J. SWINEHART, Plaintiff,

v.

Honorable R. Barry McANDREWS and Charles A. Carey, Jr., Defendants.

No. 01 CV 2281.

United States District Court, E.D. Pennsylvania.

Aug. 14, 2002.

Paul R. Beckert, Langhorne, PA, for plaintiff.

David M. Donaldson, Mary Elizabeth Butler, Admin. Office of PA Courts, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Walter Swinehart ("plaintiff" or "Swinehart") has filed suit against the Honorable R. Barry McAndrews ("Judge McAndrews"), the president judge of the Seventh Judicial District of Pennsylvania ("district"), and Charles A. Carey, Jr. ("Carey") (collectively "defendants"), the deputy court administrator of the district, alleging that defendants violated his constitutional rights under 42 U.S.C. § 1983 (" § 1983"). Specifically, Swinehart, an elected constable, claims that defendants violated his rights to both procedural and substantive due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The alleged violation occurred when Judge McAndrews, with the assistance of Carey, issued a directive to all district justices in Bucks County instructing them to no longer give assignments to Constable Swinehart. Plaintiff filed this action on May 9, 2001. On February 4, 2002, Swinehart filed a motion for summary judgment. Defendants also filed a motion for summary judgment on February 6, 2002. Now before me are those motions.

## FACTUAL BACKGROUND [1]

Swinehart was elected constable in Morrisville Borough. The Seventh Judicial District frequently contracted with plaintiff in his capacity as constable, hiring him to serve warrants not only within the district, but on a statewide basis as his position allowed. Though not employed by the Court of Common Pleas for Bucks County, Swinehart received approximately 95% of his assignments from the courts and agencies of the district. On January 17, 2001, after one such assignment, Carey received a telephone call from Helena Hughes. Ms. Hughes indicated that she wanted to file a complaint against Swinehart, based on the manner in which he conducted himself while serving a warrant on her son for non-payment of child support. Carey advised Judge McAndrews of this complaint at which point Judge McAndrews instructed Carey to begin an investigation.

Pursuant to Carey's request Ms. Hughes sent a written complaint to the district. On January 19, 2001, Carey received the written complaint and telephoned Jan Fly, the Chief Domestic Relations Investigative Officer for Bucks County, to request that she obtain state-

---

1. The plaintiff and defendants present almost identical factual accounts and acknowledge that no genuine issues of fact exist in this case. However, in considering the motions for summary judgment of each party separately, I have considered any discrepancy in the light most favorable to the nonmoving party.

ments from Swinehart and Constable Andrew Bethman, who assisted in serving the warrant at the Hughes residence. The same day, Carey also spoke with Swinehart directly. During that conversation, plaintiff indicated that he had already prepared an incident report and would forward it to Carey. Carey received this report on January 22, 2001. It contained both an original statement dated January 15, 2001, and an amendment dated January 19, 2001. Because the complaint and Swinehart's reports alluded to the presence of Philadelphia Police Officers, Carey also contacted the Philadelphia Police Department and its Internal Affairs Division. After conducting this investigation, Carey sent Judge McAndrews a memorandum and copies of Mrs. Hughes' complaint and plaintiff's incident report.

On January 24, 2001, Judge McAndrews instructed Carey to advise District Justices Kline and Clark that "Constable Walter Swinehart is not to be issued any additional work assignments by your District Court effective this date forward. This restriction shall continue in place until further notice and review by President Judge McAndrews." Memorandum of January 24, 2001, from Carey to District Justices Francis E. Clark and Joanne V. Kline. The following day Judge McAndrews received a letter from plaintiff's attorney, Paul R. Beckert, Jr., ("Beckert") questioning his client's "suspension." Under the instruction of Judge McAndrews, Carey responded to Beckert's letter the following day. Carey indicated that Swinehart was a "private vendor," had not been suspended from his constable position, and could continue to serve in that capacity. However, because Swinehart's own account of the incident indicated that he had drawn his weapon, he would not receive further work from the district, because this was "precisely the issue the Court had concerns on the last incident with Constable Swinehart." [2] In addition to alerting the district justices that they should not assign Swinehart any work, at the direction of Judge McAndrews, Carey forwarded a copy of the Hughes complaint to the Bucks County Director of Domestic Relations and the Chief Domestic Relations Investigative Officer and advised them that because plaintiff had been involved in a similar incident in the recent past, he was not to receive new assignments from the district courts. Since the issuance of this directive, Swinehart retains his position as constable, but

---

**2.** The prior incident referred to in Carey's communications took place in July 1999, during the execution of arrest warrants for Lisa Erickson for failure to pay traffic citations. Following Lisa Erickson's arrest, her parents complained to the district about Swinehart's conduct. Though the accounts of some preliminary events differ, both Swinehart and the Ericksons acknowledge that plaintiff climbed the back stairs of the Erickson's home with his gun drawn and in the "low ready position," and that young children were present in the house at the time. On October 27, 1999, Judge McAndrews asked Carey to send a copy of the Ericksons' complaint to Justice Kline along with the instructions that no further assignments be given to Swinehart without first obtaining Judge McAndrews' approval. After issuance of this directive, Carey and Judge McAndrews were contacted by Beckert.

On November 18, 1999, after a series of telephone calls and letters, Carey wrote to Beckert and indicated that Judge McAndrews' concern arose from the fact that Swinehart drew his weapon in relation to an unpaid traffic ticket and that the restriction remained in effect. On February 25, 2000, Swinehart brought suit against Carey in this court. During a settlement conference before the Honorable Diane M. Welsh, on July 14, 2000, Carey informed Swinehart that his conduct at the Erickson home was unacceptable and must not happen again. Judge McAndrews rescinded the directive and Swinehart gave assurances that no similar incident would occur in the future. Swinehart agreed, the action was closed, and he regularly received assignment within the Seventh Judicial District until Judge McAndrews' issued another directive on January 24, 2001.

has received no work from the Bucks County court system.

## LEGAL STANDARD

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The trial court should determine whether there are issues with regard to material facts that warrant a trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court must consider the underlying facts in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that might be drawn from those same facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Sempier v. Johnson and Higgins,* 45 F.3d 724, 727 (3d Cir.1995) (en banc). It is appropriate to grant summary judgment if the court finds that the record "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.' " *Matsushita* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

## DISCUSSION

■ Plaintiff's complaint includes three separate counts. First, Swinehart alleges that defendants denied him of his liberty rights without due process of law in violation of the Fourteenth Amendment of the United States Constitution. Plaintiff's second claim states that defendants caused harm to his reputation in the community and have prevented him from earning a living in the profession in which he is trained. Last, plaintiff alleges that defendants denied him of his property right in his position as a constable without due

process of law. In order to state a successful claim for violation of due process pursuant to § 1983, plaintiff must demonstrate (1) an interest included within the Fourteenth Amendment's protections for property or liberty and (2) that the state deprived him of that protected interest without requisite notice or some type of hearing. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority,* 103 F.3d 1165, 1177 (3d Cir.1997). Because Swinehart has not identified a liberty or property interest in his position nor demonstrated that defendants failed to provide him with appropriate process to safeguard his reputation, I will deny his motion for summary judgment and grant defendants' motion in its entirety.

1. *Plaintiff does not have a liberty interest in receiving work from the district courts*

■ "The right to hold specific private employment and follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments." *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1259 (3d Cir.1994). This right does not extend to include the right to any particular job, but instead protects only the " 'liberty to pursue a calling or occupation.' " *Id.* (quoting *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir.1992)). When a person's license to pursue a calling is taken away or interfered with in a substantial fashion, a plaintiff may demonstrate a due process violation. *Id.* at 1261. However, where a plaintiff has been denied only a specific job assignment or the opportunity to bid on or otherwise obtain future government contracts, that denial only implicates a liberty

interest where the barrier is based on charges of fraud or dishonesty. *See Labalokie v. Capital Area Intermediate Unit*, 926 F.Supp. 503, 508 (M.D.Pa.1996). Ultimately, "it is the liberty to pursue a particular calling or occupation and not the right to a specific job that is protected by the Fourteenth Amendment." *Piecknick*, 36 F.3d at 1262.

■ Swinehart contends that the actions of Judge McAndrews and Carey deprived him of the opportunity to earn a living practicing the profession in which he trained and his ability to perform his duties as a duly elected constable. Defendants argue that plaintiff cannot demonstrate any deprivation of a liberty interest because they have not deprived him of the right to pursue a particular calling or occupation, and have only limited his opportunities by refusing to assign him work from the Bucks County Court of Common Pleas. Plaintiff acknowledges that he is still an elected constable and can perform all duties associated with that position. Additionally, he may seek assignments in other judicial districts and may secure work as a process server. Swinehart concedes that he "neither had nor has any right to get any work from any District Justice or anyone else." Pl.'s Mot. for Summ. J. at 8.

Based upon his own admissions, plaintiff has shown that defendants are entitled to summary judgment on Count I of his complaint. Although Swinehart takes issue with his exclusion from the work assignments in the Bucks County courts, basically the right to a specific job, the actions of the defendants have not prevented him from securing alternate work, earning a livelihood, or pursuing his chosen calling as a constable. The Pennsylvania Supreme Court defined the role of constables as that of a peace officer, "charged with the conservation of peace, and whose business it is to arrest those who violated it." *In re Act 147 of 1990*, 528 Pa. 460, 598 A.2d 985

(1991). The directive issued by Judge McAndrews did not limit plaintiff's rights as a peace officer and Swinehart may continue to conserve the peace and arrest violators of it. Though a constable may also work as a process server, the right to the particular assignments in the district is not an essential function of the position, nor is it a liberty interest protected by the Fourteenth Amendment. *See Piecknick*, 36 F.3d at 1262. Swinehart's election to the position of constable gave him the constitutionally protected right to pursue the core duties associated with that position, his chosen profession. However, it did not award him a protected liberty interest in receiving assignments from the Seventh Judicial District, that of Bucks County. Because Swinehart cannot demonstrate the first element of a due process claim, a protected liberty or property interest, I will deny plaintiff's motion for summary judgment and grant defendants' motion as to the First Count of plaintiff's complaint.

2. *Plaintiff does not have a property interest in receiving work from the district courts*

■ Not all workers have a property interest in their employment. A property interest arises where there is more than a "unilateral expectation" of continuing employment and instead a "legitimate claim of entitlement" to work exists. *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. An express contract, a tenured position, or a "clearly implied promise of continued employment" may create this right. *Id.* at 576, 92 S.Ct. 2701. The legislature can also create this right by statute. *See Larsen v. Senate of Commonwealth of Pennsylvania*, 154 F.3d 82, 92 (3d Cir.1998); *Carter v. City of Philadelphia*, 989 F.2d 117, 120 (3d Cir. 1993). Therefore, a property interests must arise from either statute, regulation, government policy, or a mutually explicit

understanding of continued employment. *See Piecknick*, 36 F.3d at 1256. In all cases, state law dictates whether or not a property interest exists. *See Roth*, 408 U.S. at 577–78, 92 S.Ct. 2701.

In 1990, the Pennsylvania legislature enacted a statute providing for the supervision and training of constables as well as for the decertification and discipline of constables by the President Judges of the Court of Common Pleas. In declaring this law unconstitutional, the Pennsylvania Supreme Court discussed the role and function of the constable. *See Act 147*, 528 Pa. 460, 598 A.2d 985. The court first noted that constables worked as independent contractors rather than as employees of the commonwealth, the judiciary, or the municipality in which they serve. *Id.* at 986 (*citing Rosenwald v. Barbieri*, 501 Pa. 563, 462 A.2d 644 (1983)). Guided by its previous rulings, the court separated constables from judicial staff and found that they "were related staff who aid the judicial process, but who are not supervised by the courts." *Id.* at 987. "Simply stated, a constable is a peace officer ... [who] may also serve process in some instances." *Id.* at 990. Because as peace officers constables essentially serve an executive function, as peace officers responsible for keeping the peace and arresting those who violate it, the court determined that the judicial branch of government had no role in supervising them. Consequentially, the Pennsylvania Supreme Court declared the 1990 act unconstitutional as a violation of the separation of powers. *See id.* at 990. Under Pennsylvania law then, a constable may be removed or disciplined for acts of malfeasance or misfeasance only upon petition of the district attorney or an individual citizen. *See* 13 P.S. § 31. Short of following this procedure, judicial officers and the courts have no power to discipline or supervise the actions of duly elected constables, who as peace officers are a part of the executive, and not judicial, branch of government. *See Act 147*, 598 A.2d at 990.

■ Swinehart contends that he has a protected property interest in his elected position of constable as created by the Pennsylvania legislature in enacting 13 P.S. § 1 and 13 P.S. § 31, governing the election and removal of constables respectively. Defendants essentially concede that plaintiff does have a property interest in the constable position. However, where plaintiff views Judge McAndrews' directive as tantamount to stripping him of his elected position, defendants contend that their actions only impacted plaintiff's eligibility to receive assignments from the Seventh Judicial District, something in which he had no property interest.

The first statute cited by plaintiff indicates when elections for constable are held, clearly indicating that constable is an elected position. *See* 13 P.S. § 1. The second statutory provision contains the procedure for removing a constable from office. *See* 13 P.S. § 31. Neither law makes any reference to how constables receive assignments, grants them any inherent right to perform particular duties, nor defines any essential function of their office. Therefore, any property interest the plaintiff had in receiving assignments from the Bucks County Court of Common Pleas is not derived from statute. Nor does the decision of the Pennsylvania Supreme Court in overturning the 1990 Act create a property interest in receiving assignments from the district. If anything, the decision accomplishes the opposite, as it distinguished between the essential work of a constable as a peace officer, and other peripheral roles such as that of a process server. *See Act 147*, 598 A.2d at 990. Plaintiff has not identified any rule, regulation, custom, or mutually explicit understanding that would provide the basis for a property interest in receiving work from

the district. *See Piecknick,* 36 F.3d at 1256. Indeed, after the 1999 incident at the Erickson home, subsequent litigation, and settlement agreement, plaintiff would have been aware of the conditional nature of his continued relationship with the Bucks County Court of Common Pleas.

Ultimately Swinehart acknowledges the deficiency of his claim in admitting that he "neither had nor has any right to get any work from any District Justice or anyone else." Pl.'s Mot. for Summ, J. at 8. However, he contends that he does have a property interest in "assuring he is not deprived of work by the intervention of [Judge McAndrews] or [Carey] who have no power or responsibility over him." *Id.* Once again, Swinehart has failed to identify the statutory or regulatory source of this right. Though a President Judge of the Court of Common Pleas does not supervise constables, *Act 147,* 598 A.2d at 990, he or she does exercise general supervision and administrative control over the justices within the district. *See* Rule 17 of the Rules Governing Standards of Conduct of District Justices. The actions of the defendants obviously impacted plaintiff in a significant manner, but did not attempt to exert any supervision over a constable, and only controlled the conduct of the officers of the district. The directive issued by Judge McAndrews is consistent with his authority as the President Judge for the Court of Common Pleas for the Seventh Judicial District and did not deprive Swinehart of a property interest without due process of law. Defendants' correspondence with plaintiff's counsel made clear that the decision to give Swinehart no additional assignments from the court did not effect his role as constable and that he remained free to seek work anywhere he was legally permitted to do so. The core function of Swinehart's role as a constable, that of a "peace officer," remained wholly intact. *See Act 147,* 598 A.2d at 990. Though Judge McAndrews's

directive may have made it more difficult to secure work from other sources, or perform his peripheral function as a process server, it did not deny Swinehart of a protected property interest. Because Swinehart had no protected interest under Pennsylvania law in continuing to serve the Seventh Judicial District, I will deny plaintiff's motion for summary judgment and grant defendants' motion for summary judgment as to the Third Count of Swinehart's complaint.

3. *Plaintiff cannot sustain a due process claim based on damage to his reputation*

Even where an individual does not have a liberty or property interest in continued employment, he or she may still have a protected liberty interest in his or her reputation. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). If a plaintiff contends that the government has brought false charges against him of a nature that could potentially cause significant damage to his or her position in the community, the government may be required to hold a hearing and provide the plaintiff with the opportunity to clear his or her name. This is especially true where the charges impose a "stigma or disability," that might impact on the plaintiff's future opportunities to secure other employment. *Roth,* 408 U.S. at 573, 92 S.Ct. 2701. However, the right to a name clearing hearing is not triggered unless the allegations are significantly stigmatizing. *See McKnight v. Southeastern Pennsylvania Transportation Authority,* 583 F.2d 1229, 1236 (3d Cir.1978). Where there is no factual dispute between the parties concerning the circumstances leading to the termination

of the employment relationship, the government has no obligation to hold a name-clearing hearing because it would serve no useful purpose. *See Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

 Swinehart alleges that the defendants have damaged his reputation and negatively impacted his ability to secure alternative work. However, he has presented no evidence to support this claim. Plaintiff has only shown that he used to receive approximately 95% of his work from the district and no longer receives those assignments. He has not offered any proof that other sources of work have refused to contract with him because of Judge McAndrews' order. Moreover, even if plaintiff did make this showing he is not entitled to a name-clearing hearing. Plaintiff and defendants dispute some of the details of what occurred at the Hughes home, but plaintiff admits that he drew his weapon. Defendants contend that Swinehart's repeated drawing of his weapon while serving warrants for non-dangerous offenses caused Judge McAndrews to issue the directive barring future assignments for plaintiff. Swinehart has not alleged that this reason proffered by defendants is false, nor has he provided any alternative explanation for defendants' actions. Therefore, even assuming that Judge McAndrews' directive significantly stigmatized plaintiff and made it more difficulty for him to secure assignments outside of the district, demonstrating a protected liberty interest, defendants still had no obligation to hold a hearing. Swinehart was not entitled to a hearing to clear his name because he does not dispute the factual basis underlying defendants' decision to give him no further work in the district.

**3.** To the extent any the counts of plaintiff's complaint might be interpreted as a claim for tortious interference with contractual relations, this court declines to exercise supple-

*Id.* Plaintiff's own admissions of fact again prove fatal to his claim. Because Swinehart was not entitled to a name-clearing hearing, defendants did not violate his due process rights by failing to provide him with one. Therefore, I will deny plaintiff's motion and grant defendants' motion for summary judgment as to the Second Count of the complaint.[3]

### ORDER

**AND NOW,** this day of August 2002, it is **ORDERED** that plaintiff's motion for summary judgment (docket entry # 14) is **DENIED** and defendants' motion for summary judgment (docket entry # 15) is **GRANTED.** The clerk's office is instructed to enter judgment in favor of defendants and against plaintiff and shall mark this action closed.

mental jurisdiction over that claim as all claims arising under federal law have been dismissed.