J-A17013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CONSTABLES OF WAYNE COUNTY | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: CHRISTOPHER LEE | : : : : : : : | |
| | : | No. 2258 EDA 2020 |

Appeal from the Order Entered October 16, 2020
In the Court of Common Pleas of Wayne County Criminal Division at
No(s): CP-64-MD-0000014-2010

BEFORE: McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED NOVEMBER 17, 2021**

Christopher Lee appeals from the order denying his Petition to Reinstate Deputy Constable. He claims that the President Judge of Wayne County did not have the authority to direct magisterial district judges within her district not to assign him work. He further contends that the manner in which she did so – by order rather than memo or email – was improper and constituted a due process violation. We affirm.

In February 2020, the President Judge of Wayne County issued an order suspending Lee "from performing any and all judicial services for the 22nd Judicial District until further Order of Court." Order, filed 2/21/20. The order instructed magisterial district judges to "revoke all unperformed assignments previously assigned to [Lee] and reassign them to other constables." *Id.*

_____

[*] Retired Senior Judge assigned to the Superior Court.

Lee filed a petition in October 2020 seeking reinstatement as a deputy constable. He argued that he is a duly appointed deputy constable and remains eligible to serve in that position. Asserting a deprivation of a property right, he claimed a due process violation. He stated that there was no petition leading to the court's order and that he was never afforded a chance to respond. *See* Petition to Reinstate Deputy Constable, 10/13/20.

The trial court struck the petition to reinstate, concluding that it was filed in an administrative docket where the court filed oaths of all constables and deputy constables, not an active docket in which pleadings could be filed. The court also stated that it did not suspend Lee from acting as a deputy constable. Rather, it characterized its order as merely having suspended him from performing judicial services within the court's judicial district.

The court also concluded that it had the authority to suspend Lee from receiving assignments and to direct magisterial district judges in Wayne County to revoke incomplete assignments and not to give Lee further assignments. It pointed out that the President Judge of each judicial district is responsible for implementing statewide policies governing constables. *See* Pa.R.A.P. 1925(a) Opinion, filed 2/21/20, at 4 (citing Pa.R.J.A. 1907.2(c)).[1] The court explained that those policies empowered it, as President Judge, to determine "that an otherwise certified constable is not to be assigned judicial

---

[1] *See also* Constable Policies, Procedures and Standards of Conduct (May 2013), available at https://www.pccd.pa.gov/training/Documents/ Constable%20Education%20and%20Training/New%20Supreme%20court%2 0rules%20for%20Constables %205-29-13.pdf ("Constable Policies").

duties," and did not require a hearing or other due process protection. Opinion, filed 2/21/20, at 4 (quoting Constable Policies at 4). The court added that Pa.R.J.A. 605(A) gave it general supervision and administrative authority of magisterial district courts within Wayne County.

The court further rejected Lee's claim that he had a property right in his employment entitling him to due process protections. The court stated that pursuant to precedent, constables are independent contractors, not employees. Citing **Swinehart v. McAndrews**, 221 F.Supp.2d 552, 555 (E.D. Pa. 2002), it concluded that Lee had no property interest in receiving assignments from state court judges.

Lee filed this timely appeal.[2] He raises one issue: "Whether the [trial c]ourt erred in striking/denying the petition to reinstate Deputy Constable Lee?" Lee's Br. at 4.

Lee first challenges the court's issuance of an order to effectuate the suspension. He concedes that the President Judge of Wayne County has the administrative authority "to no longer retain a deputy constable's services. . . ." **Id.** at 11. However, he argues that the court should have announced such an administrative decision by email or memo. He contends that the lower court's suspension of him in an order constituted a "judicial decision" entitling him to "full due process" protections. **Id.** He maintains that if the court below

---

[2] This Court has jurisdiction to address Lee's appeal of his suspension from duties as a deputy constable. **See Commonwealth v. Spano**, 701 A.2d 566 (Pa. 1997) (right to appeal removal from office of borough constable is fully protected by appeal to the Superior Court).

had issued a memo or email instead of an order, "there would be no issue for appeal as this was clearly within her authority." **Id.**

We fail to understand the distinction between what Lee terms the "administrative decision" "to no longer retain a deputy constable's services" and what he calls the "judicial decision" "to suspend a deputy constable." Furthermore, we do not see why the use of one medium or another to announce either decision would determine whether due process protections are in order. Lee does not offer an explanation other than to cite cases about petitions to remove constables in which Lee states the constables were given due process. Lee himself stresses that that statutory procedure was not used here, and moreover none of those cases held or even said in *dicta* that the constables had a due process right.

Lee has cited to no authority that supports his claim that the trial court was required to direct the court administration of Wayne County to cease using his services via e-mail or memo rather than in a judicial order. "When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none." **Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 781 (Pa.Super. 2015); **see also** Pa.R.A.P. 2119(a) and (b) (requiring an appellant to discuss and cite pertinent authorities).

Moreover, we agree with the lower court here and the federal court in **Swinehart** that Lee did not have a property right in receiving work as a deputy constable. In **Swinehart**, the President Judge of Bucks County directed district justices in the county not to give assignments to a constable,

until further notice. The **Swinehart** court concluded that the directive did not implicate due process. The court explained that a property right in government employment may arise from statute, regulation, government policy, or a mutually explicit understanding of continued employment. **See Swinehart**, 221 F.Supp.2d at 557-558 (citing **Bd. of Regents of State Colls. v. Roth**, 408 U.S. 564, 576 (1972)).

The federal district court rejected Swinehart's claim that he had a property right in receiving assignments in Bucks County. The court stated that Swinehart had not identified anything giving rise to such a property right regarding assignments. The court disagreed that the statutes governing the election and removal of constables gave him the right he claimed. It pointed out that neither enactment had anything to do with the assignment of work. **Id.** at 558. The court also disagreed that a decision of the Pennsylvania Supreme Court overturning a statute that had empowered President Judges of the Courts of Common Pleas to supervise constables had created any such property right. The court explained that if anything, the decision had had the opposite effect. **Id.** (citing **In re Act 147 of 1990**, 598 A.2d 985, 990 (Pa. 1991)).

Although the parties in **Swinehart** agreed the constable had a property right in his position as constable, the court concluded that the directive had not stripped him of that position. Rather, it had merely directed district justices not to give him assignments. The court pointed out that the statutes governing the election and removal of constables did not address the

assignment of work to constables or grant them any inherent right to perform particular duties, and the constable had failed to identify any rule, regulation, custom, or mutually explicit understanding that would provide the basis for a property interest in his receiving work from the district. The court added that despite the order, Swinehart still was able to perform his peace officer functions as a constable. The court thus concluded that no deprivation of property, and thus no due process violation, could have occurred.

We find **Swinehart**'s analysis persuasive. Even if Lee had a property right in his position as a deputy constable, the order at issue merely suspended him from receiving assignments and directed the reassignment of any unfinished work previously given to him. The order in no way removed him from his position. Lee has not identified any statute, regulation, government policy, or a mutually explicit understanding that gave him property right either in receiving assignments or in his position.

Lee attempts to distinguish **Swinehart** on three bases: it was a federal civil rights case, the court there did not issue an order, and the case did not address alleged limitations on the power of a President Judge over magisterial district judges. None carries water. The context of the inquiry – whether it be straight constitutional due process (as here) or a layered claim through 42 U.S.C. § 1983 (as in **Swinehart**) – does not change the property rights analysis. And as above, we fail to see the import of effectuating the alleged deprivation in an order, a letter, an email, or otherwise.

Lee's further claim that the President Judge did not have the authority to direct magisterial district judges within Wayne County to stop giving him assignments likewise fails. Lee cites the definition of "related staff" in the Rules of Judicial Administration to argue that while the rules give a president judge power to establish "general hiring procedures" for district court "staff," magisterial district judges have exclusive power over hiring.

The argument fails on its own terms. He conflates the definition of "related staff" in Pa.R.J.A. 102,[3] with the use of the word "staff" in the then-effective version of Pa.R.J.A. 605.[4] He does not attempt to explain away the

---

[3] "'Related staff.' All individuals employed at public expense who serve the unified judicial system, but the term does not include personnel of the system." Pa.R.J.A. 102.

[4] Lee cites the following:

(A) The president judge of the court of common pleas of a judicial district shall exercise general supervision and administrative authority over magisterial district courts within the judicial district.
(B) The president judge's administrative authority over magisterial district courts within the judicial district includes but is not limited to, and shall be governed by, the following: . . .
 (3) Staff in the Magisterial District Courts--
 (a) Except where minimum job qualifications for staff in magisterial district courts are prescribed by the Supreme Court of Pennsylvania, the president judge may prescribe minimum job qualifications for staff in the magisterial district courts in the judicial district.
 (b) The president judge may establish a classification system and job descriptions for all authorized staff in the magisterial district courts in the judicial district. The president judge may establish general procedures regarding the hiring, firing, supervision, and discipline of all authorized staff in the magisterial district courts in the judicial district.
 (c) Subject to subparagraphs (a) and (b) above, magisterial district judges

*(Footnote Continued Next Page)*

use of the word "related." ***See In re Act 147***, 598 A.2d at 990 (explaining that constables are "related staff," as regards the judicial branch). Nor does Lee attempt to explain the effect of amendments to the portions of Rule 605 on which he relies. The changes came into effect after the order in question and, assuming Lee is correct that constables are "staff," arguably had the effect of ratifying the President Judge's action here.[5]

_____

(i) shall be responsible for the management of authorized staff in his or her court;
(ii) shall assign work among authorized staff in his or her court, and;
(iii) may select one authorized staff member as personal staff.

Pa.R.J.A. 605(B)(3) (repealed effective April 14, 2021).
[5] The relevant portions of the rule as amended read:

In the interest of efficient administration of the judicial district, the president judge of the court of common pleas of a judicial district shall exercise general supervision and administrative authority over magisterial district courts within the judicial district. The administrative authority of the president judge over magisterial district courts within the judicial district includes, but is not limited to, and shall be governed by, the following:
 (A) Administration of District Courts.
  (2) Staff in the Magisterial District Courts--
  (a) The president judge, in the interest of efficient administration of the judicial district:
  (i) retains the final authority to hire, supervise, and fire staff in the magisterial district courts in the judicial district. In accordance with such authority, the president judge may establish minimum qualifications, a classification system and job description for all authorized staff, and general procedures regarding the hiring, firing, supervision, and discipline of all authorized staff;
  (ii) may transfer or reassign staff members from one court to another. Ordinarily, such transfer or reassignment should occur only after consultation with the magisterial district judges involved. Absent extraordinary circumstances, the president judge may transfer or

*(Footnote Continued Next Page)*

Moreover, we agree with the trial court that it had the necessary authority under Rule 605(A) as it existed at the time it issued the order in question:

> Pursuant to Pa.R.J.A. No. 605(A), the President Judge in the Court of Common Pleas of a judicial district shall exercise general supervision and administrative authority over magisterial district courts within the judicial district. It was within the President Judge's right and sound discretion to direct the Magisterial District Judges within the 22[nd] Judicial District to revoke all unperformed assignments assigned to Lee and to reassign them to other constables because the President Judge has administrative authority over the Magisterial District Judges. Further, moving forward, it is within the President Judge's right and sound discretion to direct the Magisterial District Judges not to utilize Lee's judicial services as she deems appropriate.

Trial Ct. Op., at 4-5.

Particularly in view of Lee's concession that the President Judge had the administrative authority "to no longer retain a deputy constable's services," we perceive no error or abuse of discretion. Lee's Br. at 11.

Order affirmed.

---

reassign personal staff only with the consent of the magisterial district judge;
(iii) may assign, as appropriate, temporary or floater staff;
(iv) may establish performance evaluations and procedures for staff, including personal staff, in the magisterial district courts in the judicial district which shall be utilized by the magisterial district judges; and
(v) may prescribe training for staff in the magisterial district courts in the judicial district.

Pa.R.J.A. 605(A).

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *11/17/2021*