460

598 A.2d 985

**In re ACT 147 OF 1990.**

**Petition of Nancy SOBOLEVITCH, Court Administrator of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued April 11, 1991.

Decided Nov. 6, 1991.

Howard M. Holmes and Kenneth R. Wilson, Philadelphia, for petitioner.

Ernest D. Preate, Jr., Atty. Gen., for respondent.

John R. O'Rourke, Jr., Norristown, and Howard W. Abramson, Philadelphia, for intervenor—Pennsylvania State Constables Ass'n.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This case involves the status of constables and deputy constables in our governmental system. Nancy M. Sobolevitch, Court Administrator of Pennsylvania, invokes this Court's original jurisdiction pursuant to Article V, sections 2 and 10 of the Pennsylvania Constitution (involving separation of powers), and 42 Pa.C.S. § 721(3) (involving *quo warranto*),[1] to seek a declaratory judgment challenging Act 147 recently enacted by our Legislature and affecting the status of constables and deputy constables. For the

---

1. *Quo warranto* is the sole exclusive method to try title or right to public office. *Spykerman v. Levy,* 491 Pa. 470, 421 A.2d 641 (1980); *League of Women Voters of Lower Merion and Narberth v. Board of Commissioners of Lower Merion Township,* 451 Pa. 26, 301 A.2d 797 (1973); *DeFranco v. Belardino,* 448 Pa. 234, 292 A.2d 299 (1972). To determine whether constables and deputy constables can properly have the status of office holders in the judicial system is properly tried in a *quo warranto* action. Original jurisdiction in the Supreme Court for actions in *quo warranto* is, of course, based on 42 Pa.C.S. § 721(3).

reasons set forth below, we must declare Act 147 to be invalid and unenforceable.

On November 19, 1990, Senate Bill 983, entitled "An Act Amending Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, Further Providing for the Jurisdiction of the Philadelphia Municipal Court; and Adding Provisions Relating to Constables," passed the General Assembly. On November 29, 1990, the Governor of Pennsylvania signed the legislation into law as Act 147 of 1990, with the Act taking effect in sixty days.

Act 147 provides for the supervision, training and certification of constables and deputy constables engaged in "judicial duties" by this Supreme Court through our Administrative Office of Pennsylvania Courts, with a surcharge of $2.00 on each fee payable for the performance of judicial duties by constables and deputy constables as the funding mechanism for the program of training and certification. The Act further provides for mandatory decertification and discretionary disciplining of constables and deputy constables through the President Judges of the Courts of Common Pleas.

Act 147 also provides, in a nonseverable provision, that constables and deputy constables "shall enjoy all the rights and privileges accorded to constables by ... the Public Official and Employee Ethics Law," which provision appears to attempt to restrain this Court from imposing any limitation on the political activities of constables and deputy constables, despite the extensive supervisory and disciplinary duties over constables and deputy constables imposed on the court system by the Act.

In light of these legislatively-mandated restrictions on this Court for power to supervise personnel who, by operation of Act 147, come directly under this Court's administrative authority, the Court Administrator of Pennsylvania has brought a petition seeking a declaratory judgment as to the constitutionality and validity of Act 147 of 1990, 42 Pa.C.S. § 2941, *et seq.*, in whole or in part.

Section 5 of Act 147 provided that "(t)his act shall take effect in 60 days." At that time, constables and deputy constables were required to begin collecting the surcharge required under the Act, the Minor Judiciary Education Board was obligated to make provision for the necessary education and training courses, and the Administrative Office of Pennsylvania Courts was obligated to determine how the Act is to be implemented in light of our Political Activity Prohibition Order and related considerations. The Court Administrator of Pennsylvania therefore sought a stay of the effective date of the operation of the Act, pending the outcome of this declaratory judgment action. On January 18, 1991, this Court granted the Court Administrator's motion to stay.

A constable is an elected official authorized to appoint deputy constables. 13 P.S. § 1, *et seq.* A constable is an independent contractor and is not an employee of the Commonwealth, the judiciary, the township, or the county in which he works. *Rosenwald v. Barbieri,* 501 Pa. 563, 462 A.2d 644 (1983). In *Rosenwald,* a constable, who had been sued by a property owner for alleged libel and negligent infliction of emotional distress in connection with the posting of property, brought a legal action seeking a declaration that he was entitled to legal representation in the action by at least one of a number of respondents including: the President Judge of the Montgomery County Court of Common Pleas, the District Justice of Montgomery County, the Attorney General of Pennsylvania, Cheltenham Township and the Court Administrator of Pennsylvania.

This Court held that constables were neither acting for nor under the control of the Commonwealth and that, therefore, they could not be considered to be employees of the Commonwealth. *Rosenwald,* 501 Pa. at 569, 462 A.2d at 647. Thus, this Court determined that the Attorney General was not responsible for providing legal counsel to constables. Likewise, this Court determined that a constable was not an employee of the township under the Judicial Code, 42 Pa.C.S. §§ 8547 and 8548. *Rosenwald,*

501 Pa. at 570–71, 462 A.2d at 647–48. This Court also found no legal duty on the part of the President Judge and the District Justice to provide legal representation. *Rosenwald*, 501 Pa. at 568, 462 A.2d at 646.

With respect to the constable's claim against the Court Administrator, this Court held that the Administrator was not obligated to provide legal representation to the constable based upon the Rules of Judicial Administration. The plaintiff in *Rosenwald* claimed that under Rule of Judicial Administration 505, he was entitled to legal representation by the Court Administrator. However, this Court held that the constable was not entitled to representation by the Court Administrator because constables do not fall within the definition of "personnel of the system."

Rule of Judicial Administration 102 defines "personnel of the system" as "judges and other judicial officers, their personal staff, the administrative staff of courts and justices of the peace, and the staff of the administrative office and other central staff." Rule of Judicial Administration 102 defines "related staff" as "all individuals employed at public expense who serve the unified judicial system, that the term does not include personnel of the system." The Rule further defines "system and related personnel" as "personnel of the system and related staff. *The term includes district attorneys, public defenders, sheriffs and other officers serving process or enforcing orders....*" (Emphasis added). On the basis of these definitions, this Court held that:

the term "related staff" covers those whose function aids the judicial process but who are not supervised by the courts. These definitions, clearly distinguish between "personnel of the system" and "related staff." Under the definitions, we find that plaintiff [constable] is included in "related staff" and not "personnel of the system." As we find that a constable is by definition included in the related staff, we conclude that constables are not by definition "personnel of the system," which would permit

representation as set forth under Rule 505 of Judicial Administration.

*Rosenwald*, 501 Pa. at 569–70, 462 A.2d at 647.

Thus, in defining the relationship of constables to the Unified Judicial System, this Court found that constables were related staff who aid the judicial process but who are not supervised by the courts. Prior to Act 147, constables might be said to orbit the Unified Judicial System, although at some distance from the system's center, as related staff who aid the judicial process but who are not directly supervised by the courts. Furthermore, no court rules of conduct or directives specifically addressed their behavior in that capacity.

Section 1 of Act 147 amends Section 102 of Title 42 Pa.C.S. to include within the definition of "officer enforcing orders":

(4) A constable or deputy constable while actually engaged in the performance of judicial duties as defined in section 2941....

Section 4 of Act 147, amending Subchapter C of Chapter 29 of Title 42, 42 Pa.C.S. § 2942(b), provides:

The Supreme Court shall have the power to prescribe general rules governing practice, procedure and conduct of all officers serving process, or enforcing orders, judgments or decrees of any court or district justice. Constables and deputy constables may perform judicial duties if they are certified pursuant to section 2943 and, while doing so, shall be subject to the supervision of the president judge of the judicial district in which they were elected or appointed. The president judge may appoint a deputy court administrator for the purpose of assisting him in administering the constable system in the judicial district.

Act 147 further provides, at 42 Pa.C.S. § 2948(c):

Administration.—The Administrative Office shall administer the constables and deputy constables who are certified under section 2943 pursuant to the Pennsylvania Rules of

Judicial Administration as the governing authority may direct.

Act 147 establishes a mandatory "Constables' Education and Training Program," providing for certification of constables and deputy constables in connection with the performance of "judicial duties," such as service, execution and return of court authorized process, levy, sale and conveyances, control of monies and custody of persons, through a program of instruction and examination provided by the Minor Judiciary Education Board. 42 Pa.C.S. § 2943.

Funding for this mandatory education and training program is through a surcharge of $2.00 on each fee payable to constables and deputy constables for the performance of judicial duties, which monies are turned over monthly to the county treasurer and forwarded to the Pennsylvania Department of Revenue for deposit into a special restricted receipts account within the General Fund to be known as the Constables' Education and Training Account. From this fund the General Assembly will annually appropriate to the Court Administrator of Pennsylvania "such funds as may be necessary to carry out the provisions of this act." 42 Pa.C.S. § 2947($l$)–(p).

Act 147 further establishes a system of "discipline" for constables and deputy constables, providing that conviction of or a plea of nolo contendere to murder, a felony or a misdemeanor will automatically result in loss of certification to perform judicial duties, as well as suspension from such duties by the President Judge. If the conviction is affirmed after all appeals are exhausted, the President Judge is required to revoke certification. If the conviction is reversed, the President Judge must immediately lift the suspension. 42 Pa.C.S. § 2948(a).

Act 147 further provides that a constable or deputy constable convicted of or pleading nolo contendere to murder or a felony is forever barred from performing judicial duties. Where the matter involves a misdemeanor, however, a constable or deputy constable "may ... seek recertification pursuant to section 2943(a) (relating to certifica-

tion)" upon the happening of certain preconditions. 42 Pa.C.S. § 2948(b).

Act 147 also provides that the President Judge has the power of suspension or revocation of certification of a constable or deputy constable, upon petition of any person supported by affidavit and issuance of a rule to show cause, for "incompetence, neglect or violation of any rule of court relating to the(ir) conduct ... in the performance of their judicial duties." Pending a final ruling, the President Judge may suspend or restrict the certification of the accused constable or deputy constable if the facts alleged demonstrate a "clear and present danger to the person or property of others."

Section 4 of Act 147, amending Subchapter C of Chapter 29 of Title 42, 42 P.S. § 2942(d), provides:

Nonseverable provisions.—Notwithstanding the provisions of this or any other law to the contrary, all constables and deputy constables shall enjoy all of the rights and privileges accorded to constables by section 10 of the act of October 4, 1978 (P.L. 883, No. 170), referred to as the Public Official and Employee Ethics Law. This subsection is nonseverable from the remainder of this subchapter. In the event that section 10 of the Public Official and Employees Ethics Law or this subsection is invalidated or suspended as to constables or deputy constables, then this entire subchapter shall be deemed to be invalidated or suspended.

Section 10 of the Public Official and Employees Ethics Law, 65 P.S. § 410 provides:

Constables.—Nothing in this act, or in any other law or court shall be construed to prohibit any constable from also being an officer of a political body or political party as such terms are defined in the act of June 3, 1937 (P.L. 1333, No. 320), known as the "Pennsylvania Election Code," and the same may hold the office of a county, State or national committee of any political party, and may run for and hold any elective office, and may participate in any election day activities.

468

Pursuant to Article V, section 2 of the Pennsylvania Constitution, the Supreme Court of Pennsylvania is the supreme authority over the Judicial Branch of government of the Commonwealth of Pennsylvania. Consistent with this constitutionally-mandated authority, this Court has adopted various means to maintain a "steadfast separation of partisan political activity from the judicial function." *In re Prohibition of Political Activities by Court–Appointed Employees*, 473 Pa. 554, 560, 375 A.2d 1257, 1259–60 (1977).

For example, this Court has adopted a Code of Judicial Conduct which, in Canon 7, severely limits the political activity of judges and judicial candidates, consistent with the elective process. Likewise, Rule 15 of the Rules Governing Standards of Conduct of District Justices imposes similar restrictions on District Justices.

In addition, by a series of administrative directives issued through the Administrative Office, culminating in the Administrative Order dated June 29, 1987, entitled "In re: Prohibited Political Activity by Court–Appointed Employees," 82 Judicial Administration Docket No. 1, generally known as the Political Activity Prohibition Order, this Supreme Court has promulgated guidelines which prohibit partisan political activity by court-appointed employees. The term "court-appointed employees" includes, but is not limited to:

"all employees appointed to and who are employed in the court system, statewide and at the county level, employees of the Administrative Office of Pennsylvania Courts, Court Administrators and their employees and assistants, court clerks, secretaries, data processors, probation officers, and such other persons serving the judiciary."

The historical background to the order of June 27, 1987, is set forth in *In re Prohibition of Political Activities by Court–Appointed Employees*, 473 Pa. 554, 558–60, 375 A.2d 1257, 1258–59 (1977).

A substantial and well-documented history of the regulation by this Court, pursuant to our supervisory powers over the Judicial Branch of state government under the Pennsyl-

vania Constitution, of partisan political activity by elected and appointed judicial officers as well as court-supervised personnel, precedes the enactment of Act 147.

In *Kremer v. State Ethics Commission*, 503 Pa. 358, 469 A.2d 593 (1983), this Court had occasion to consider whether the financial disclosure requirements of the Ethics Act[2] applied to the judiciary. In an opinion authored by Mr. Justice Zappala, this Court held that the legislation infringed upon the constitutional power of a co-equal branch of government, and therefore could not be applied to the Judiciary. In particular, this Court held:

> Under the doctrine of separation of powers, the legislature may not exercise any power specifically entrusted to the judiciary, which is a co-equal branch of government, *Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780 (1977). Article 5, § 10 of the Constitution of Pennsylvania gives the Supreme Court the power to supervise the courts. It reads in relevant part as follows:
>
>> "(a) The Supreme Court shall exercise general supervision and administrative authority over all the courts and justices of the peace ...
>>
>> (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure, and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes or appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose.

**2.** Act of October 4, 1978, P.L. 883, No. 170, 65 P.S. § 401, *et seq.*

All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions."

Legislation that infringes on this Court's authority over courts is invalid.

503 Pa. at 361–62, 469 A.2d at 595.

Simply stated, a constable is a peace officer.[3]  A constable is a known officer charged with the conservation of the peace, and whose business it is to arrest those who have violated it. *Commonwealth v. Deacon*, 8 Serg. & R. 47, 49 (1822). By statute in Pennsylvania, a constable may also serve process in some instances. See generally, 13 P.S. §§ 41–46. See also, *In re Borough High Constables*, 32 Del. 335 (1944); *Rich v. Industrial Commission*, 15 P.2d 641, 80 Utah 511 (1932); *State v. Franklin*, 80 S.C. 332, 60 S.E. 953, 955 (1908); *Somerset Bank v. Edmund*, 81 N.E. 641, 76 Ohio St. 396, 11 L.R.A., N.S. 1170, 10 Ann.Cas. 726 (1907); *Leavitt v. Leavitt*, 135 Mass. 191 (1883). As a peace officer, and as a process server, a constable belongs analytically to the executive branch of government, even though his job is obviously related to the courts. It is the constable's job to enforce the law and carry it out, just as the same is the job of district attorneys, sheriffs, and the police generally. Act 147 is unconstitutional and violates the separation of powers doctrine in our Constitution because it attempts to place constables within the judicial branch of government and under the supervisory authority of the judicial branch. It attempts to make constables "personnel of the [judicial] system" and this can no more be done than attempting to make the governor, members of the legislature, district attorneys or sheriffs "personnel of the system." At most, constables are "related staff" under the Rules of Judicial Administration. They cannot, however, be made part of the judicial branch under our Constitution. See, *Rosenwald, supra.* To attempt to do so

3. The constable is a police officer. It would perhaps not be remiss to recall Sir William S. Gilbert's famous line from *The Pirates of Penzance*, "When constabulary duty's to be done, to be done, a policeman's lot is not an 'appy one!"

constitutes a gross violation of the separation of powers. Personnel whose central functions and activities partake of exercising executive powers cannot be arbitrarily made part of another branch of government whose functions they do not perform. To do so interferes with the supervisory authority of the Supreme Court just as much as attempting to dictate how that authority is to be exercised over personnel who are properly part of the judicial system. See, *Kremer, supra.* In consequence, we find Act 147 unconstitutional and invalid. See also, *Snyder v. Commonwealth, Unemployment Compensation Board of Review,* 509 Pa. 438, 502 A.2d 1232 (1985).

Special note must be taken of that part of Act 147, which is expressly made nonseverable from the rest of Act 147, and which attempts to permit constables and deputy constables to continue to engage in partisan political activity (see above). Since we have held that constables and deputy constables cannot be brought under the umbrella of the judicial system, we make no comment on the wisdom of this provision and we are in no position to ascertain whether the legislature would extend such blanket permission to engage in political activities to constables where they are not, and cannot be, part of the judicial personnel system. Suffice to say, the legislature had made this section nonseverable and since we find the rest of Act 147 unconstitutional and invalid, this section must be struck down as well.

For the reasons set forth above, our judgment is that Act 147 is hereby declared to be infested with unconstitutionality and hence is, and the same must be, declared to be invalid and unenforceable.

## ORDER

PER CURIAM.

AND NOW, this 6th day of November, 1991, the Application for Relief in the Nature of a Motion to Modify Order Staying and Suspending the Effective Date of Act 147 of 1990 is dismissed as moot.

472

McDERMOTT, J., concurs in the result.

LARSEN, J., notes his dissent.

NIX, C.J. did not participate in the consideration or decision of this matter.