**In Re: Petition for Appointment of Constable Bernard E. PENDER for the 2nd Ward of Allentown.**

**Appeal of: Bernard E. Pender.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2011.
Decided July 15, 2011.

Joseph P. Maher, Allentown, for appellant.

Kevin P. McCloskey, Allentown, for appellee County of Lehigh.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and FEUDALE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Bernard E. Pender (Pender) appeals from an order of the Court of Common Pleas of Lehigh County (trial court) denying his petition seeking appointment as constable for the 2nd Ward in Allentown because he was not "suitable" for the position. For the reasons that follow, we affirm the trial court's order.

44 Pa.C.S. § 7121 provides that:

When a vacancy occurs in the office of constable, regardless of the reason for the vacancy, the court of common pleas of the county of the vacancy, upon petition of not less than ten qualified electors residing in the borough, city, ward or township of the vacancy, shall appoint a suitable person, who, upon being qualified as required by law, shall serve as the constable for the unexpired term of the vacancy.

On February 24, 2010, Pender caused to be filed a petition seeking appointment as constable for the 2nd Ward in Allentown along with 17 signatures of qualified electors. In that petition, he asked to be appointed to that vacant position. The Office of the District Attorney of Lehigh County opposed his appointment.

At the hearing, Pender, appearing *pro se*, was the only witness to testify on his behalf. He stated that he moved to Allentown solely because of the vacancy for constable and had been living there for five months. Prior to that time, he had resided in Norristown for three years and had been a constable there. However, because his landlord did not pay the mortgage on his house, he could no longer stay there and he decided not to run for re-election for constable in that town. Instead, he saw the vacancy in Allentown and decided to move and apply for the position. He was currently working as a process server for a law firm, but previously had taken the Constable's Education and Training Board Training Class at Scranton and passed. He stated that he had been a deputy constable from 1998–2001 in East Norriton and after that was appointed as constable for the 3rd Ward of Norristown. He had also worked as a bounty hunter in Chicago in 1992 and 1993 and before that had been in the military for eight years when he was discharged in 1992 due to an injury.

Pender admitted on cross-examination that in 2001, he was sued in federal court three times for various things he did during his job as deputy constable but was never found guilty of any of the charges. He had one jury trial where he was found not negligent; a summary dismissal before a judge; and a third proceeding where he was also found not negligent. He also stated that he had been sued for wrongful death. He explained that he was involved in a shooting in Philadelphia where an individual fired at him and when he told the person to drop his weapon and he did

not, Pender fired and shot the person who then died. Pender also stated that he had been arrested four times: once for loitering in 1988; the second time in Germany when he refused to leave an area when ordered; the third time in Chicago in 1992 or 1993 for having unregistered weapons while serving a warrant; and the fourth time in 1998 when he broke up a fight and defended himself and he was charged with simple assault, aggravated assault and possessing an instrument of crime. Regarding the last arrest, he explained that he was involved with a woman named Angela Thaxton (Thaxton) and was called to her home where a fight broke out between him and another man that Thaxton had started dating. Pender stated that the man struck him from behind with a pipe and he responded by hitting the man with his gun and then handcuffing him. The allegation by the man who hit him with the pipe was that Pender had pistol-whipped him with his gun. Because the victim in that case died in a car accident before the trial was completed, he was found not guilty. Pender stated that he was found not guilty of all of the other charges as well.

Detective Ed Ressler (Detective Ressler) testified that he made inquiries of police officers in the Lansdale Police Department and asked whether Pender would be suitable in a position as constable, and the police officers said he would not. Detective Ressler did not mention the names of any individuals that he spoke to, but stated that he specifically spoke to them regarding the incident involving Thaxton. While Pender generally objected to the testimony as hearsay, at the same time, he went on to give his version of this incident.

The trial court refused to appoint Pender to the position. It did so because during his tenure as a deputy constable, three federal lawsuits were filed against him including a wrongful death action where he shot and killed an armed individual. Pender had also been arrested four times with the offenses ranging in severity from loitering in 1988 to aggravated assault in 1998. Because the duties of a constable were of a peace officer, he would have to act without supervision, and because Pender's background was checkered, the trial court found him not to be a "suitable person" within the meaning of 44 Pa.C.S. § 7121. This appeal followed.

We note that once a petition to fill the vacancy is filed under 44 Pa.C.S. § 7121 by 10 registered voters, it requires the court to fill the vacancy but does not require the court to fill the vacancy by the person who caused the petition to be filed. It merely sets in motion the requirement that the position is to be filled. To find a suitable candidate, the trial court could have advertised in the local newspapers for candidates or given notice to organizations whose membership may have been interested in filling the vacancy to recruit candidates to be interviewed. Hopefully, this would provide for a number of candidates from which the trial court could choose. A hearing to select a candidate to fill the vacancy could best be described as a job interview where the trial court could pick one suitable candidate over another or, absent finding one suitable, none at all. Absent an abuse of discretion, the trial court order would stand.

■ As to the merits, Pender first contends that the word "suitable" as used in 44 Pa.C.S. § 7121 must not only be viewed in the context of that section, but also viewed in the context of the entire Constable Law. He argues that because other sections of the Constable Law are by "which one is governed to become 'qualified' in addition to meeting the criteria of getting signatures and residency by which one also becomes 'qualified' to apply for

the vacancy in the office," (Pender's brief at 11), the trial court erred in solely relying on the word "suitable" in determining that he was not suitable to become a constable.[1]

Contrary to Pender's contention, 44 Pa. C.S. § 7121 provides that the court "shall appoint a suitable person, who, upon being qualified as required by law, shall serve as the constable for the unexpired term of the vacancy." Under this provision, once a candidate is found "suitable" for appointment, he can perfect his appointment by becoming "qualified" to serve by meeting proper education, training and certification requirements.[2] Because suitability for appointment and being qualified to serve as a constable are different, the trial court properly made a determination only as to whether Pender was a "suitable" candidate for the vacant constable position, not whether he was a "qualified" to serve if appointed.

■ Pender next contends that the trial court placed undue weight on his prior criminal offenses when denying his application because he was not found guilty of those offenses and they did not occur while he was employed as a deputy constable or a constable. In support of this argument, he relies on *In Re: Petition to Remove Constable David Visoski*, 852 A.2d 345

(Pa.Super.2004), where the Superior Court held that a constable could not be removed even though he was found guilty of criminal offenses during the time he served as a constable, but not while acting as a constable. It did so because the now repealed 13 P.S. § 31[3] requires that the objectionable conduct occur while the constable is acting as a constable. Because *Visoski* was involved with the removal of a constable under a statute requiring that the malfeasance occur while serving as a constable, unlike here, where Pender is seeking to fill a vacancy under a statute that requires a person be found "suitable" before being appointed to the vacancy, it simply has no application to this case.

Regarding his contention that the trial court placed undue weight on his prior criminal offenses, the trial court was allowed to take into consideration all of Pender's history when making a decision as to his "suitability" for the position. As the trial court explained:

In this case, the petitioner's background is checkered. Civil rights actions and arrests for serious offenses are dotted throughout his career. The petitioner points out that he has not been convicted nor judgment been entered against him. However, the absence of a conviction or judgment is not the *sine qua non* of suitability to be appointed as a consta-

---

1. Pender also argues that the trial court erred in defining "suitability" in the context of a psychological state of mind and no evidence was submitted on such an impairment during the hearing. However, other than this bald allegation, Pender offers no support for this argument, and we see nothing in the trial court hearing transcript or opinion to merit further discussion.

2. *See e.g.*, 44 Pa.C.S. §§ 7142 (relating to conduct and insurance); 7145 (relating to education and training); 7146 (relating to continuing education); and 7148 (relating to use of firearms).

3. Act of May 27, 1841, *as amended*, formerly 13 P.S. § 31, repealed by Section 4 of the Act of October 9, 2009, P.L. 494, provides:

   The courts of quarter sessions of each county shall also have full power, ... to inquire into the official conduct of any constable of said county in cases other than charges against such constable or the existence in him of habits of intemperance or neglect of duty; and, in all cases where said court shall be satisfied that because of any act or acts of malfeasance or misfeasance in office committed by him, ... it shall be lawful for said courts, respectively, to decree the removal of such constable from office,....

ble. For example, the qualifications of a police officer look beyond convictions and include background investigations that scrutinize the applicant. It also appears that the petitioner may have used his position as a former constable to shield his conduct and cloak it with legitimacy. This Court is not satisfied that the petitioner will act in a manner that is required of its constables. The prior history of arrests, civil rights actions, and lack of any positive recommendations reflect negatively on the petitioner's request for appointment.

(Trial court's July 20, 2010 decision at 6.) Because the trial court considered all of Pender's criminal history as recounted by him and some of which did, in fact, occur while he was employed as a deputy constable, the trial court did not place "undue weight" on his prior criminal offenses.

Pender also argues that the trial court did not give appropriate weight to the fact that he was previously a deputy constable and a constable and was "suitable" to perform those duties. However, the trial court did consider his former positions and as noted above, stated in its decision that, "It also appears that the petitioner may have used his position as a former constable to shield his conduct and cloak it with legitimacy." *Id.* The trial court specified that it was during his time as a deputy constable that three federal lawsuits were filed against him as well as the wrongful death action where he shot and killed an armed individual. The trial court obviously did not believe that he was "suitable" to perform the duties as a deputy constable when so employed and considered that information when deciding to deny his application.

Finally, Pender argues that the trial court erred by relying on Detective Ressler's testimony because it was hearsay testimony and inadmissible. While it did mention Detective Ressler's testimony in its opinion, the trial court did not rely on that testimony in arriving at its conclusion that Pender was not suitable to serve as a constable, instead relying on largely uncontradicted evidence regarding Pender's suitability. Even if it did rely on that testimony, if anything, it was harmless error because there was more than sufficient evidence to support the trial court's conclusion that Pender was not suitable for appointment as a constable.

Accordingly, because the trial court did not abuse its discretion in refusing to appoint Pender as a constable, its order is affirmed.

### ORDER

AND NOW, this 15th day of July, 2011, the order of the Court of Common Pleas of Lehigh County, Criminal Division, dated July 20, 2010, at No. MD–767–2010, is affirmed.

CONCURRING OPINION BY Senior Judge FEUDALE.

I concur in the result reached by the majority, but write separately to explain why the trial court's action was not an abuse of discretion. The majority opinion notes that selecting a "suitable" candidate for the Constable vacancy "could best be described as a job interview where the trial court could pick one suitable candidate over another or, absent finding one suitable, none at all." *In re Petition for Appointment of Constable Bernard E. Pender for the 2nd Ward of Allentown,* 25 A.3d 453, 455 (Pa.Cmwlth.2011). After a careful review of the transcript it was apparent the applicant's "resume" as presented at the hearing was "wanting" and did not measure up to the expectations of the trial court.

In both of his opinions, the trial court, through the Honorable Judge Robert L. Steinberg, thoughtfully and carefully opined that the record as developed reflected a "background that is checkered." [1] Clearly, Pender's presentation revealed areas of some success as well as trouble and controversy.

In my view, the essence of Pender's argument is that based on his requisite education, training, certification and past experience as a Constable, he was "qualified" and thus "suitable." Such an averment is neither logically nor legally persuasive. If such were correct, Judge Steinberg's decision in this case would have been relegated to a "ministerial" act.[2] While I agree the standard of "suitability" lacks legal definition, the exercise of discretion within one's judgment and conscience is hard to legally define. Clearly, if there would have been two "qualified" candidates for the position, such would have required the exercise of discretion.

The Pennsylvania Supreme Court has opined that "constables might be said to orbit the Unified Judicial System, although at some distance from the system's center, as related staff who aid the judicial process but who are not directly supervised by the Courts." *In re Act 147 of 1990*, 528 Pa. 460, 465, 598 A.2d 985, 987 (1991). In consideration of the foregoing, it was incumbent upon Judge Steinberg to fill the arguably "related staff" vacancy with someone he, in his discretion, found both qualified and suitable.

In attempting to prove an abuse of discretion, the challenger must satisfy a heavy burden. *Paden v. Baker Concrete Constr. Inc.*, 540 Pa. 409, 658 A.2d 341 (1995). An abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but "requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or lack of support as to be clearly erroneous." *Commonwealth v. Eichinger*, 591 Pa. 1, 31, 915 A.2d 1122, 1140 (2007); *Allen v. Thomas*, 976 A.2d 1279, 1282 (Pa.Cmwlth.2009); *Commonwealth v. Dodge*, 957 A.2d 1198, 1202–03 (Pa.Super.2008) (quoting *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 559, 839 A.2d 1038, 1046 (2003)). In conclusion, nothing in the record reflects that Pender[3] has met that heavy burden and an appellate court should not find an abuse of discretion because another court might have reached a different conclusion, (as occurred in Pender's prior appointment in Montgomery County).

---

1. The term "checkered" may be defined as "marked by inconsistent fortune or recurring problems." *Merriam–Webster Dictionary*, 122 (New Ed.2004).

2. Black's Law Dictionary defines "ministerial" as "of or relating to an act that involves obedience to instructions or laws instead of discretion, judgment or skill." Black's Law Dictionary, 1017 (8th Ed.2004).

3. Pender intentionally chose and seemed to aspire to work as a constable via appointment as compared to placing his "qualifications" before the electorate.