J-A05017-25

2025 PA Super 161

| IN RE: MARK D. BILETNIKOFF | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: MARK D. BILETNIKOFF | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 895 WDA 2024 |

Appeal from the Order Entered June 25, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-MD-0000116-2022

BEFORE:  MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY KING, J.:                                    **FILED: July 28, 2025**

Appellant, Mark D. Biletnikoff, appeals from the order entered in the Erie County Court of Common Pleas, which directed Appellant, a constable for the Sixth Judicial District of Pennsylvania, not to wear his court uniform while performing non-judicial duties.  For the following reasons, we reverse.

The trial court set forth the relevant facts and procedural history of this case as follows:

> This appeal arises from cross-complaints submitted to the Erie County Constable Review Board ("CRB") in early 2024 by two Erie County constables after they were involved in a verbal altercation at a local Walmart.  [Appellant's] complaint against Constable John Wilson, submitted on or about February 22, 2024, averred that Wilson entered the Walmart where Appellant was working as a private security guard, and threatened to assault him.  (Exs. B, D).  Constable Wilson's cross-complaint averred, *inter alia*, that Appellant initiated the confrontation and "[Appellant] was in a constable uniform doing private security for a firm out of Pittsburgh.  I was there as a civilian in regular clothes.  He

_____

[*] Retired Senior Judge assigned to the Superior Court.

tried to use his power to get me kicked out of all Walmart's in Erie." (Ex. E).

CRB met to review the complaints on April 2, 2024. (Ex. B). Both constables were present. (*Id.*) CRB issued its recommendations to the undersigned President Judge on or about April 11, 2024. (*Id.*)

(Trial Court Opinion, dated 9/23/24, at 1-2). Specifically:

[CRB recommended that the President Judge require Appellant to attend additional constable education classes and also requested] that the [c]ourt consider providing direction on Erie County Court's policy regarding off duty security work by Constables. It has been an issue of complaint on multiple occasions that Constables are presenting themselves for private security work while wearing the uniforms that they also utilize when they represent the [c]ourt. Unfortunately, their behavior while performing private security does not always comply with the level of professionalism expected from court personnel. Although Act 235[1] provides specific direction about private security certification, the Constable Rules are not quite as clear, which creates a grey area. The Board feels that it would be beneficial to further define what is acceptable in Erie County.

(CRB Memorandum, dated 4/11/24, at 2). Based on the CRB's recommendations, on June 6, 2024, the President Judge entered an order requiring Appellant to attend the basic constable education session at his own expense and warning him that "further misconduct may result in cessation of his services as constable for the Sixth Judicial District of Pennsylvania." (Trial

---

[1] Act 235, the Lethal Weapons Training Act, sets forth requirements for individuals who carry lethal weapons while on duty to undergo an education and training program. *See* Act No. 1974–235, P.L. 705 (Oct. 10, 1974), 22 P.S. §§ 41 to 50.1.

- 2 -

Court Order, dated 6/6/24, at 1). In addition, the President Judge's June 6, 2024 order stated:

> FURTHER, this Order shall clarify that it is a violation of Standard of Conduct 3 to wear a [c]ourt uniform while performing private security or other non-judicial duties: "A constable shall not lend the prestige of his or her office to advance the private interests of others."

(Trial Court Order, dated 6/6/24, at 1-2).[2]

Appellant subsequently filed a motion for reconsideration. On June 25, 2024, the court "granted Appellant's motion to limit his participation in the Basic Constable Education session, but denied his motion to vacate the uniform prohibition in the [June 6, 2024 order]." (Trial Court Opinion, dated 9/23/24, at 2). Appellant timely filed a notice of appeal on July 24, 2024. Pursuant to the court's order, Appellant filed a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b) on August 26, 2024.

Preliminarily, we address this Court's jurisdiction over this appeal, which we may raise *sua sponte*. ***Smith v. Ivy Lee Real Est., LLC***, 152 A.3d 1062, 1065 (Pa.Super. 2016). Section 742 of the Judicial Code provides that this Court has "exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except" classes of appeals over which jurisdiction has been exclusively vested in the Supreme Court or the Commonwealth Court.

---

[2] The President Judge also suspended Constable Wilson from serving as a constable for the Sixth Judicial District of Pennsylvania for a period of 90 days.

42 Pa.C.S.A. § 742.

Section 762 of the Judicial Code sets forth the specific categories of appeals over which the Commonwealth Court has exclusive jurisdiction including Commonwealth civil cases, governmental and Commonwealth regulatory criminal cases, secondary review of certain appeals from Commonwealth agencies, local government civil matters relating to the application, interpretation and enforcement of certain statutes, certain private corporation matters, eminent domain, and immunity waiver matters relating to actions against local parties. *See* 42 Pa.C.S.A. § 762(a).

Our Supreme Court has exclusive jurisdiction of appeals from the final orders of courts of common pleas in limited circumstances as set forth in Section 722, including the right to public office. *See* 42 Pa.C.S.A. § 722. Specifically, our Supreme Court has exercised jurisdiction over constable-related cases under Section 722(2) involving the right to public office; however, the Court has explained that appeals which involve a "right to public office" constitute prequalification actions, as opposed to removal proceedings in which an appellant appeals his removal from office, and which are protected by the right to appeal to the Superior Court. *See Commonwealth v. Spano*, 549 Pa. 501, 701 A.2d 566 (1997) (concluding that jurisdiction over appeal from trial court's removal order is vested in Superior Court). *See also In re Petition to Remove Constable Visoski*, 852 A.2d 345 (Pa.Super. 2004) (Superior Court exercising jurisdiction over appeal involving removal action).

- 4 -

Instantly, there is nothing in the record to suggest that the matter before this Court involves a prequalification right to public office that would fall within our Supreme Court's exclusive appellate jurisdiction. *See* 42 Pa.C.S.A. § 722. Furthermore, the order appealed from does not fall within any of the categories of cases over which the Commonwealth Court has exclusive jurisdiction. *See* 42 Pa.C.S.A. § 762(a). Thus, we conclude that jurisdiction over the instant case properly lies with this Court, and we turn to Appellant's issues on appeal.

Appellant raises two issues for our review:

> Did the trial court abuse its discretion, err as a matter of law, and violate the constitutionally mandated separation of powers when it issued a "clarification" of standard of conduct 3 prohibiting constables from wearing their constable uniforms while performing non-judicial duties?
>
> Did the trial court err as a matter of law and abuse its discretion when it interpreted standard of conduct 3 as prohibiting constables from wearing their constable uniforms while performing non-judicial duties?

(Appellant's Brief at 4) (unnecessary capitalization omitted).

For purposes of disposition, we combine Appellant's issues. First, Appellant argues that the trial court did not have the authority to regulate his attire because he is an independent contractor and member of the executive branch, not an employee of the judicial branch. As such, Appellant insists that the court's order dictating the attire of constables erroneously attempted to place constables under the supervisory authority of the court. Appellant contends that the court's order treats constables as working for the court and

must be reversed as a violation of the separation of powers doctrine.

Second, Appellant claims that the court erred in prohibiting Appellant from wearing his constable uniform while performing private security or other non-judicial duties. Appellant maintains that "[t]here is no 'Court uniform' for constables. The court neither designs, nor issues constable uniforms." (Appellant's Brief at 22 n.11). Appellant explains that at the time of the incident, he "was wearing his privately purchased Pennsylvania State Constable uniform which clearly identified him as a Pennsylvania State Constable." (*Id.* at 13-14). Appellant avers that "the Pennsylvania State Constable uniform is appropriately worn whenever a constable is performing constabulary duties" including "providing 'private security.'" (*Id.* at 38). Appellant complains that the court's order improperly attempts to control the methods by which constables perform non-judicial services, and the court's authority does not extend to such control. Appellant concludes the court's order must be reversed on these grounds. We agree that relief is due.

Appellant's challenge to the authority of the trial court presents a question of law for which our standard of review is *de novo* and our scope of review plenary. *See Petition to Remove Constable Visoski, supra* at 346. A brief discussion of the office of the constable and its relationship to the judicial branch is relevant to our review. The Pennsylvania Rules of Judicial Administration provide that "[c]onstables are independent contractors, belonging analytically to the executive branch of government." Pa.R.J.A.

1907.2 (Cmt.).  In *In re Act 147 of 1990*, 528 Pa. 460, 598 A.2d 985 (1991),[3] Our Supreme Court explained that "[a] constable is an elected official authorized to appoint deputy constables.  A constable is an independent contractor and is not an employee of the Commonwealth, the judiciary, the township, or the county in which he works."  *Id.* at 463, 598 A.2d at 986 (citations omitted).  The Court elaborated that,

> in defining the relationship of constables to the Unified Judicial System, this Court found that constables were related staff who aid the judicial process but who are not supervised by the courts.  Prior to Act 147, constables might be said to orbit the Unified Judicial System, although at some distance from the system's center, as related staff who aid the judicial process but who are not directly supervised by the courts.

*Id.* at 465, 598 A.2d at 987.  The Court further explained:

> Simply stated, a constable is a peace officer.  A constable is a known officer charged with the conservation of the peace, and whose business it is to arrest those who have violated it.  By statute in Pennsylvania, a constable may also serve process in some instances.  As a peace officer, and as a process server, a constable belongs analytically to the executive branch of government, even though his job is obviously related to the courts.  It is the constable's job to

_____

[3] In *In re Act 147 of 1990*, our Supreme Court exercised its original jurisdiction pursuant to Article V, Sections 2 and 10 of the Pennsylvania Constitution (involving separation of powers) to evaluate the constitutionality of Act 147, which had recently been enacted by the General Assembly.  Act 147 provided for the supervision, training, and certification of constables engaged in judicial duties by the Pennsylvania Supreme Court through the Administrative Office of Pennsylvania Courts.  "The Act further provides for mandatory decertification and discretionary disciplining of constables and deputy constables through the President Judges of the Courts of Common Pleas."  *In re Act 147 of 1990*, 528 Pa. 460, 462, 598 A.2d 985, 986 (1991).

>enforce the law and carry it out, just as the same is the job of district attorneys, sheriffs, and the police generally.

*Id.* at 470, 598 A.2d at 990 (footnote and citations omitted). Ultimately, the Court held that Act 147 was "unconstitutional and violates the separation of powers doctrine in our Constitution because it attempts to place constables within the judicial branch of government and under the supervisory authority of the judicial branch." *Id.*

While noting the status of constables as independent contractors and related staff under the judicial system, our Supreme Court promulgated Rule of Judicial Administration 1907.2, which "directs that the Court Administrator shall establish uniform policies, procedures and standards of conduct for constables who perform services for the courts." Pa.R.J.A. 1907.2(a).[4] Rule 1907.2(b) provides that the "president judge of a judicial district is authorized to enact policies and procedures consistent with those established by the Court Administrator … as local rules," however, "[a]ny policies and procedures

---

[4] We note that the word "uniform" may be used as an adjective, meaning "having always the same form, manner, or degree," or as a noun, meaning "dress of a distinctive design or fashion worn by members of a particular group and serving as a means of identification." *See* "Uniform," Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/uniform. Last Accessed June 16, 2025. As there is no reference to the attire of constables, we conclude that Rule 1907.2's reference to the Court Administrator's duty to "establish **uniform** policies, procedures and standards of conduct for constables" uses the term as an adjective describing that the policies, procedures, and standards of conduct would have the same form, manner and degree in all judicial districts. Pa.R.J.A. 1907.2(a) (emphasis added).

enacted by the president judge … that may deviate from the uniform policies, procedures and standards of conduct for constables established by the Court Administrator must be approved by the Court Administrator before promulgation."  Pa.R.J.A. 1907.2(b).  Rule 1907.2 also provides that "President Judges are responsible for implementing the provisions set forth in this rule within their respective judicial districts."  Pa.R.J.A. 1907.2(c).

In accordance with Rule 1907.2(a), the Administrative Office of Pennsylvania Courts promulgated the Constable Policies, Procedures and Standards of Conduct ("Constable Policies").[5]  The Constable Policies authorize president judges to create a CRB to assist in resolving disputes related to a constable's performance of judicial duties,[6] and specifically provides that "[t]he CRB may receive complaints by or against constables regarding the performance of judicial duties, financial/payment disputes or other matters relevant to a constable's services to the courts."  Constable Policies, Article I, Section B.

The Constable Policies set forth standards of conduct in Article III, which provides:

_____

[5]  **See** Constable Policies, Procedures and Standards of Conduct, Administrative Office of Pennsylvania Courts, May, 2013 (available at: https://www.pacourts.us/Storage/media/pdfs/20210211/191048-constablehandbook-002699.pdf).

[6] Throughout the Constable Policies, "judicial duties" refer to those services a constable performs for the courts pursuant to Act 49 of 2009, 44 Pa.C.S.A. §§ 7161-7161.1.  **See** Constable Policies, Article I, Section A.

Standard 1. Adherence to the Unified Judicial System Constable Policies, Procedures and Standards of conduct

A constable shall adhere to the terms and provisions contained within the Constable Policies. Nothing in the Constable Policies shall prohibit judicial districts from enacting policies and procedures consistent therewith.

\* \* \*

Standard 3. Impropriety and Appearance of Impropriety to be Avoided

A constable must respect and comply with the law, and **while performing judicial duties**, shall conduct him or herself in a manner that promotes public confidence in his or her integrity and impartiality. A constable shall not allow family, social or other relationships to influence his or her conduct **while performing judicial duties**. A constable shall not lend the prestige of his or her office to advance the private interests of others, nor shall he or she convey or permit others to convey the impression that they are in a special position to influence the constable **in the performance of judicial duties**.

Constable Policies, Article III, Standards 1 and 3 (emphasis added). The Constable Policies further provide that "[a] constable shall carry identification and wear clothing that clearly identifies him or her as a constable while performing judicial duties." Constable Policies, Article IV, Section C.

Act 49 of 2009 established the Constables' Education and Training Board and provided that in order to perform judicial duties, a constable must have completed the Constables' Education and Training Program. **See** 44 Pa.C.S.A. § 7142(a). Section 7142 also states that "while a constable or deputy constable is performing duties other than judicial duties, regardless of whether or not he is certified under this subchapter, he shall not in any manner hold

himself out to be active as an agent, employee or representative of any court, magisterial district judge or judge." 44 Pa.C.S.A. § 7142(f).

Instantly, the challenged provision of the court's order stated that "this Order shall clarify that it is a violation of Standard of Conduct 3 to wear a Court uniform **while performing private security or other non-judicial duties**." (Trial Court Order, dated 6/6/24) (emphasis added). In its Rule 1925(a) opinion, the trial court explained its rationale as follows:

> The President Judge of Erie County is of the opinion that wearing the same uniform for judicial, non-judicial, and private work activities is a violation of § 7142(f)'s prohibition against holding [oneself] out as an agent of the court. Further, it constitutes *per se* lending of the prestige of the constable's office to advance private interests, in this case Appellant's own and Walmart's, in violation of Constable Policies' Standard 3, which violations could lead, and in the President Judge's experience have led, to claims of misrepresentation of constables' powers as a non-judicial or private workers; confusion over the propriety of employing elected officials for private purposes; and consequential loss of public confidence in the judiciary and justice system, especially when a particular constable abuses his power or acts unprofessionally, as Appellant did here, while wearing the same uniform he wears when performing duties for the court.

(Trial Court Opinion, dated 9/23/24, at 4). Therefore, the court concluded that "it is within the court's power to set uniform requirements and/or restrictions for constables contracting for work within the Sixth Judicial District." (*Id.*)

Upon review, we agree that the President Judge has limited authority to oversee the conduct of constables while "**engaged to perform services for**

- 11 -

**any court of the unified judicial system**." *See* Pa.R.J.A. 1907.2 (emphasis added). The Constable Policies that president judges are tasked to enforce are similarly limited to a constable's conduct while performing judicial duties. Indeed, the plain language of Standard of Conduct 3 makes clear that it concerns the impropriety and appearance of impropriety while performing judicial duties. (*See* Constable Policies, Article III, Standard 3). Consequently, the trial court's order, governing constables' attire and prohibiting them from wearing a "court uniform"[7] "while performing private security or other non-judicial duties" (*see* Trial Court Order, dated 6/6/24), exceeds the limited authority that the president judge has to oversee the conduct of constables.

Additionally, our review of the Constable Policies reveals no provision establishing a court uniform for constables. Further, although the court cited to Section 7142(f) in its order, which could arguably be interpreted to prohibit constables from wearing the same uniform while performing judicial and non-judicial duties, we have uncovered no authority under which the president judge of a judicial district is independently empowered to set individual attire requirements for constables within their judicial districts.

_____

[7] Although the President Judge refers to a "court uniform" in its order, the record before us supports Appellant's assertion that constables are not issued a "court uniform." Indeed, the Constable Policies require only that "[a] constable shall carry identification and wear clothing that clearly identifies him or her as a constable while performing judicial duties." (*See* Constable Policies, Article IV, Section C).

- 12 -

Therefore, the President Judge's proclamation here, "that it is a violation of Standard of Conduct 3 to wear a Court uniform while performing private security or other non-judicial duties" exceeded the president judge's limited authority over constables.  We agree with the President Judge that associating oneself with the judiciary while performing non-judicial duties may undermine the public's confidence in the judiciary, especially when the individual abuses his power or acts unprofessionally.  However, given that constables are not members of the judicial branch, and that a president judge's supervision of constables is limited to their adherence to the Constable Policies while performing judicial duties, we are constrained to conclude that the President Judge erred in restricting the attire of constables while they are performing non-judicial duties.  *See In re Act 147 of 1990, supra*.  Accordingly, we reverse.

Order reversed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/28/2025