Stacy Parks MILLER, District
Attorney, Appellant

v.

COUNTY OF CENTRE; Sean P.
McGraw; Andrew Shubin, Attorney at
Law, d/b/a/ The Law Office of Andrew
Shubin; Bernard F. Cantorna, Es-
quire, Bryant & Cantorna, P.C.; and
John Does 1–5, Appellees

Stacy Parks Miller, District
Attorney, Appellant

v.

County of Centre; Sean P. McGraw; An-
drew Shubin, Attorney at Law, d/b/a/
The Law Office of Andrew Shubin;
Bernard F. Cantorna, Esquire, Bryant
& Cantorna, P.C.; and John Does 1–5,
Appellees

No. 98 MAP 2016
No. 99 MAP 2016

Supreme Court of Pennsylvania.

Argued: April 5, 2017
Decided: November 22, 2017

David R. Crowley, Esq., Centre County Public Defender's Office, for Amicus Curiae Public Defender Association of Pennsylvania.

Joel L. Frank, Esq., Scot Russel Withers, Esq., Lamb McErlane, PC, for Amicus Curiae Pennsylvania Office of Open Records.

Casey Ann Gillespie, Esq., Gillespie, Miscavige, & Ferdinand, L.L.C., for Amicus Curiae County Commissioner's Association of Pennsylvania.

Melissa Bevan Melewsky, Esq., Pennsylvania NewsMedia Association, for Amicus Curiae Pennsylvania NewsMedia Association and ACLU of Pennsylvania.

Ronald D. Barber, Esq., for Participants Sean P. McGraw, Andrew Shubin, Attorney at Law, D/B/A/ The Law Office of Andrew Shubin.

John Timothy Hinton Jr., Esq., for Participants Bernard F. Cantorna, Esquire and Bryant & Cantorna, P.C.

Robert J. Gillespie Jr., Amicus Curiae, pro se.

Bruce Lee Castor Jr., Esq., Rogers & Associates, LLC, Appellant.

Mary Lou Maierhofer, Esq., Margolis Edelstein, Craig James Staudenmaier, Esq., Joshua D. Bonn, Esq., Nauman, Smith, Shissler & Hall, LLP, for Appellees.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

## OPINION

JUSTICE WECHT

In this appeal, we decide whether the office of Stacy Parks Miller ("Parks Miller"), the District Attorney of Centre County, Pennsylvania, is an "office or entity of the unified judicial system" and thus properly classified as a "judicial agency" for purposes of application of Pennsylvania's Right-to-Know Law, 65 P.S. §§ 67.101–67.3104 ("RTKL").[1] Under the RTKL, only the financial records of a judicial agency are subject to disclosure in response to RTKL requests. 65 P.S. § 67.304. Parks Miller contends that this limitation upon the scope of disclosure of judicial records applies to district attorneys.

In a unanimous, published *en banc* opinion, the Commonwealth Court concluded that a district attorney's office is not a "judicial agency" for purposes of the RTKL. *Miller v. Cty. of Centre*, 135 A.3d 233 (Pa. Cmwlth. 2016) (*en banc*). In arriving at this conclusion, the Commonwealth Court turned to the definitions of "personnel of the system," "related staff," "county staff," and "system and related personnel" in the definitions section of the Pennsylvania Judicial Code, 42 Pa.C.S. § 102. The Commonwealth Court determined that a district attorney's office is "county staff" and "related staff," *i.e.*, two categories which are expressly excluded from the Judicial Code's definition of "personnel of the system."

We agree with the Commonwealth Court. Examination of the RTKL, the definitional section of the Judicial Code, 42 Pa.C.S. § 102, and the definitions provided

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104, as amended.

in our Rules of Judicial Administration, demonstrate that a district attorney's office is not a "judicial agency" for purposes of the RTKL. Accordingly, we affirm.

## I. Background

### A. Factual History

Between 2014 and 2015, several Centre County criminal defense attorneys submitted separate RTKL requests to Centre County ("County") seeking emails, text messages, instant messages, and/or other electronic communications exchanged between Parks Miller and certain members of the Centre County judiciary, including Court of Common Pleas Judge Jonathan Grine and Magisterial District Judge Kelley Gillette–Walker (collectively, the "Judges"). The RTKL requests also asked the County to produce a log of text messages, phone calls, and voicemail messages, including the date and time of each call/text message, the duration of the call, and the substance of the text message/voicemail, if available.

The County responded to the RTKL requests without notifying Parks Miller or the Judges. Am. Compl., ¶¶ 27, 38. The County produced, *inter alia,* electronic billing information provided to it by Verizon and created color-coded spreadsheets that tracked usage between the Judges and Parks Miller's office, including the time, date, length of call, and type of communication (call or text). *Id.,* ¶ 25. The spreadsheets did not reveal the content of the communications. Because Parks Miller's office email resides on the County's server, the County also read her emails during the relevant periods, determined which were subject to disclosure, and produced them to the requesters without Parks Miller's knowledge. *Id.,* ¶¶ 20–21, 30, 32. The records obtained by the attorney-requesters were subsequently used in criminal cases to demonstrate improper *ex*

*parte* communications between Parks Miller and the Judges. *Id.,* ¶¶ 23, 25.

### B. Procedural History

Parks Miller and the two Judges each filed a separate action requesting declaratory and injunctive relief, seeking to enjoin the County from responding to any RTKL requests on their behalf. The trial court consolidated the actions filed by the two Judges, and entered a preliminary injunction enjoining the County from making any response to RTKL requests for judicial records and directing that such requests instead be forwarded to the open records officer designated for the appropriate judicial agency (pursuant to County policy, the Prothonotary and/or the district court administrator). On appeal, the Commonwealth Court affirmed the trial court's entry of a preliminary injunction. *Grine v. Cty. of Centre,* 138 A.3d 88 (Pa. Cmwlth. 2016). This Court denied the County's petition for allowance of appeal.

In her separate action, Parks Miller alleged that a district attorney's office is a "judicial agency" under the RTKL. Citing to the definition of the phrase "system and related personnel" in the Pennsylvania Rules of Judicial Administration, which references "district attorneys," Parks Miller contended that district attorneys' offices are part of Pennsylvania's unified judicial system. Asserting that hers is a "judicial agency" under the RTKL, Parks Miller argued that only the financial records of her office are subject to disclosure in response to RTKL requests. *See* 65 P.S. § 67.304.

Following a hearing on May 13, 2015, the trial court accepted Parks Miller's argument and granted the injunction. The trial court entered an order preliminarily enjoining the County from "making any response to any request made pursuant to the [RTKL] for judicial records relating to

the [DA's office]," and directed that future RTKL requests to Parks Miller be directed to "the appropriate [county] official" for RTKL requests to the district attorney's office in accordance with the County's RTKL policy. Trial Court Order, 5/13/2015. In so ruling, from the bench, the trial court made clear that it considered the actions brought by the Judges and Parks Miller to present the same basic issue of disclosure of judicial records: "I have already made a decision … in the [Judges' cases] … and I'm certainly not going to change my opinion in this case." N.T. 90: 16–20, May 12, 2015.

The County appealed the trial court's decision to grant Parks Miller a preliminary injunction. In a unanimous *en banc* opinion, the Commonwealth Court reversed.[2] In concluding that a district attorney's office is not a "judicial agency," the Commonwealth Court looked to definitions contained in the Pennsylvania Judicial Code, 42 Pa.C.S. §§ 101–9813. *Miller*, 135 A.3d at 237. The Commonwealth Court noted that a district attorney's office does not fall within the definition of "personnel of the system," which includes judicial officers, personal staff, administrative staff, and central staff. Instead, the court found that a district attorney's office constitutes "related staff," which is comprised of public employees that serve the unified judicial system but are not personnel of the system, as well as "county staff," because Parks Miller holds a county elected posi-

tion. *Id.* at 237–38 (citing 42 Pa.C.S. § 102; *Rosenwald v. Barbieri*, 501 Pa. 563, 462 A.2d 644, 647 (1983) ("the term 'related staff' covers those whose function aids the judicial process but who are not supervised by the courts")). The Commonwealth Court further observed that the Pennsylvania Constitution includes district attorneys as "county officers," a category not supervised by the courts. *Id.* at 238 (citing PA. CONST. art. IX, § 4; *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638, 644 (1981)). Based upon the foregoing, and because the "office is not judicial in nature" or vested with any judicially-related powers, the Commonwealth Court concluded that the trial court erred by finding that Parks Miller's office was a "judicial agency" under the RTKL. *Id.* at 238–39.

This Court granted discretionary review to answer the following question: "Do district attorneys and their offices constitute 'judicial agencies' as defined under Section 102 of the Right-to-Know–Law, 65 P.S. § 67.102?" *Miller v. Cty. of Centre*, 158 A.3d 1236 (Pa. 2016). This issue involves the proper interpretation of a statute. It is therefore a pure question of law, for which our standard of review is *de novo* and our scope of review is plenary. *See, e.g., A. Scott Enters., Inc. v. City of Allentown*, 636 Pa. 249, 142 A.3d 779, 786 (2016); *In re Estate of Stephano*, 602 Pa. 527, 981 A.2d 138, 140 (2009).

---

2. In the present appeal, Parks Miller notes that the documents at issue in her appeal are the same documents that the Commonwealth Court held were not subject to disclosure under the RTKL in the Judges' appeal. Parks Miller's Brief at 26. She contends that the Commonwealth Court "unnecessarily injected a layer of complexity and an opportunity for mischief" by requiring multiple RTKL analyses for the same documents. *Id.* The issue in the present appeal, however, is entirely different from that addressed by the Commonwealth Court in the Judges' appeal, specifi-

cally the difference between whether district attorneys, as opposed to judges, are a part of the unified judicial system. Moreover, as the County correctly observes, the decision in this appeal will have far-reaching implications well beyond the production of the documents at issue here, as a decision that Parks Miller and her office are "judicial agencies" under the RTKL will extend to the production of all public documents in her possession or control (and those of other district attorneys), regardless of any involvement with members of the judiciary. County's Brief at 25–26.

In support of her position, Parks Miller repeats the arguments she presented to the trial court and the Commonwealth Court, focusing upon application of definitions of various terms (e.g., "personnel of the system," "system and related personnel") in the Judicial Code and the Rules of Judicial Administration. Parks Miller finds it particularly appropriate to treat records maintained by a district attorney's office the same as records maintained by judicial agencies under the RTKL because the Judicial Code empowers the Administrative Office of Pennsylvania Courts ("AOPC") to supervise the establishment and maintenance of judicial records by "system and related personnel," a term defined to include district attorneys. 42 Pa.C.S. § 4301(a) ("All system and related personnel shall establish and maintain such records as shall be required by law.").

Parks Miller further contends that a finding that district attorneys are "judicial agencies" under the RTKL does not violate the separation of powers doctrine because the Supreme Court already supervises and regulates district attorneys under the Judicial Code and the Rules of Judicial Administration, as district attorneys are included in "system and related personnel." She also submits that her prosecutorial role is not a reason to exclude her from the unified judicial system, as the function of district attorneys is closely intertwined in the judicial process. According to Parks Miller, there could be no criminal justice component to the "unified judicial system" without district attorneys, who extensively participate in, and exclusively serve, the unified judicial system. She concedes she is not a member of the judiciary and has no judicial functions, but claims she is "part of a

'team' comprised of judges, court staff, lawyers, clerks, etc. that, taken as a whole, serve the 'unified judicial system.' " Parks Miller's Brief at 24. For these reasons, Parks Miller insists that a district attorney's office, including hers in Centre County, is a "judicial agency" under the RTKL.

In response, the County asserts that the Commonwealth Court correctly held that a district attorney's office is not a "judicial agency" under the RTKL.[3] The County agrees with the Commonwealth Court's analysis and application of the definitions in the Judicial Code and the Rules of Judicial Administration. County's Brief at 17–26. The County also contends that the Commonwealth Court's interpretation is bolstered by other provisions of the RTKL that define a distinct role for district attorneys to perform in providing access to law enforcement records. The County notes that Section 503 of the RTKL, 65 P.S. § 67.503, provides that the district attorney of each county must designate his or her own appeals officer to hear appeals relating to access to criminal investigative records. The County avers that if a district attorney's office was a "judicial agency" under the RTKL, the RTKL provisions requiring the separate adjudication of appeals involving criminal investigative records would be superfluous because only "financial records" of the district attorney's office would be subject to disclosure under the RTKL.

Relying upon *In re Act 147 of 1990*, 528 Pa. 460, 598 A.2d 985, 990 (1991), the County asserts that district attorneys constitute part of the prosecutorial arm of the Commonwealth government and are thus members of its executive branch. As such,

---

**3.** The Centre County Office of Open Records, the Pennsylvania Newsmedia Association and the ACLU of Pennsylvania, the County Commissioner's Association of Pennsylvania and the Public Defender Association of Pennsylvania have all filed amicus briefs with this Court in support of the County's position.

the County insists that the Pennsylvania Constitution forbids the General Assembly, through legislation like the RTKL, from making executive branch officials part of the judiciary, something that would work a fundamental violation of the separation of powers doctrine. The County derides Parks Miller's contention that she is part of a "team" that serves the unified judicial system, as the members of the judiciary are not her teammates but rather serve as impartial referees adjudicating the criminal complaints she files. According to the County, district attorneys, who are charged with prosecuting crimes on behalf of the citizens of the Commonwealth, do not sit in the same capacity as those charged with overseeing the fair and impartial administration and adjudication of those prosecutions, namely the judiciary.

## II. Analysis

■ The courts of this Commonwealth long have recognized that citizens have a common law right to the inspection of public documents. *Mooney v. Temple Univ. Bd. of Trs.*, 448 Pa. 424, 292 A.2d 395, 398 n. 10 (1972) ("There is a well-established right at common law to inspect public records upon request in a reasonable manner."); *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844, 847 (1958). Given the importance of the need for open observation of our criminal justice system, this common law right of access has always extended to public judicial records. *See, e.g., Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414, 417–421 (1987). Our Court has acknowledged that this principle of openness with respect to public judicial records is, in addition to common law tradition, also grounded in the Pennsylvania Constitution. *Id.* at 417 ("Article I, section 9 provides, 'In all criminal prosecutions the accused hath a right to . . . a speedy public trial . . . ,' and Article I, section 11 states, 'All courts shall be open.'"). While we never have had occasion carefully to define

the parameters of the right to inspect public judicial documents, it is clear that this right extends at least to "[d]ocuments that are filed with the court and, in particular, those that are used by the judge in rendering a decision are clearly considered public judicial documents." *Commonwealth v. Long*, 592 Pa. 42, 922 A.2d 892, 898 (2007).

With respect to agencies of this Commonwealth, the common law right to inspect public documents was codified through the General Assembly's enactment of the Right to Know Act ("RTKA"), 65 P.S. §§ 66.1–66.4 (repealed, effective January 1, 2009). *Fenstermaker*, 530 A.2d at 419; *Pa. State Educ. Ass'n v. Commonwealth, Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 152 (Pa. 2016) ("[I]n 1957 the Pennsylvania General Assembly codified the common law right to inspect public records by enacting the RTKA to provide public access to public records."). According to its legislative account, the stated purpose of the RTKA was to "strike the veil of secrecy from [those] . . . government departments and agencies" that have become so far removed from the electoral process that public oversight is necessary to keep them in check. Pennsylvania Legislative Journal, Session 1957, No. 35, April 10, 1957, 2186; *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844, 848 (1958) (stating that the RTKA was enacted to "enlarge the rights of the general public for the examination and inspection of public records"). Passage of the RTKA had no superseding effect on the right to inspect public judicial documents, as by its terms the statute did not apply to the judiciary. 65 P.S. § 66.1(1) (repealed); *Fenstermaker*, 530 A.2d at 419.

■ In 2008, the General Assembly enacted the RTKL, replacing the RTKA. The revisions to the RTKL changed the method of access to an individual's personal information and set forth new criteria to determine whether information is protect-

ed from disclosure. *Pennsylvania State Educ. Ass'n*, 148 A.3d at 153. The objective of the RTKL "is to empower citizens by affording them access to information concerning the activities of their government," to promote openness to official government information in order to prohibit secrets, scrutinize the actions of public officials, and to make public officials accountable for their actions. *SWB Yankees LLC v. Wintermantel*, 615 Pa. 640, 45 A.3d 1029, 1042 (2012); *Office of the Dist. Attorney of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017). The RTKL affords greater access to public records than did the RTKA, resulting in "a dramatic expansion of the public's access to government documents." *Levy v. Senate of Pa.*, 619 Pa. 586, 65 A.3d 361, 381 (2013).

■ Unlike the RTKA, the RTKL has some application to the judiciary. All records in the possession of Commonwealth and local agencies are presumed to be public records subject to disclosure, unless they are exempt under a section 708 exception, subject to a privilege, or are otherwise exempt under another state or federal law, regulation, or judicial order or decree. 65 P.S. § 67.305(a). In contrast, only financial records[4] in the possession of a judicial agency "shall be presumed to be available" in accordance with the RTKL. 65 P.S. § 67.305(b). Section 304(a) provides further that "[a] judicial agency shall provide financial records in accordance with this act or any rule or order of court providing equal or greater access to the records." 65 P.S. § 67.304(a). For these reasons, the RTKL limits the public rec-

ords that judicial agencies must disclose to financial records.[5] *See also Court of Common Pleas of Lackawanna Cty. v. Pa. Office of Open Records*, 2 A.3d 810, 813 (Pa. Cmwlth. 2010).

Parks Miller argues that her office is a "judicial agency" entitled to claim the limited disclosure requirements under the RTKL. Section 102 of the RTKL defines a "judicial agency" as "[a] court of the Commonwealth or any office or entity of the unified judicial system," 65 P.S. § 67.102. The question presented here requires that we engage in statutory interpretation to assess the scope of this term. The Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, recognizes that the objective of all interpretation is to ascertain and effectuate the General Assembly's intent. 1 Pa. C.S. § 1921(a). A statute's plain language generally provides the best indication of legislative intent. 1 Pa.C.S. § 1921(b). However, if the words of the statute are not free from ambiguity, the intention of the General Assembly may be ascertained by considering, *inter alia*, the occasion and necessity for the statute, the object or policy goals to be obtained, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c).

Parks Miller attempts to shield herself from the disclosure obligations of the RTKL by insisting that her office is a "judicial agency." Parks Miller's argument relies entirely upon the facially curious inclusion of district attorneys within the definition of "system and related personnel" set forth in the Judicial Code and the

4. The RTKL defines "financial records," to include "any account, voucher or contract dealing with: (i) the receipt or disbursement of funds by an agency; or (ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property." 65 P.S. § 67.102.

5. In at least one case, the Commonwealth Court has posited that given the limited disclosure requirements for public judicial records under the RTKL, the common law right to access to these records remains intact. *Faulk v. Phila. Clerk of Courts*, 116 A.3d 1183, 1188 (Pa. Cmwlth. 2015) ("The RTKL is not the sole mechanism for obtaining records from judicial agencies").

Rules of Judicial Administration. 42 Pa. C.S. § 102; Pa.R.J.A. 102. It is this curiosity that we ponder here.

In addition to the courts of the Commonwealth, the term "judicial agency" in the RTKL includes "any other entity or office of the unified judicial system." 65 P.S. § 67.102. The "unified judicial system" is defined by the Judicial Code and by this Court's Rules of Judicial Administration. In particular, the term "personnel of the system" includes "[j]udicial officers, personal staff, administrative staff and central staff." 42 Pa.C.S. § 102; *see* Pa. R.J.A. 102. The term "related staff" is defined as "[a]ll individuals employed at public expense who serve the unified judicial system, but the term does not include personnel of the system." 42 Pa.C.S. § 102; Pa.R.J.A. 102. The term "system and related personnel" is defined to include district attorneys, as follows:

> The term includes district attorneys, public defenders, sheriffs and other officers serving process or enforcing orders, registers of wills, prothonotaries, clerks of the courts, clerks of the orphans' court division, coroners, jury commissioners, probation officials, and the personnel of all of the foregoing.

42 Pa.C.S. § 102; *see also* Pa.R.J.A. 102;[6] *Rosenwald*, 462 A.2d at 647 ("These definitions[ ] clearly distinguish between 'personnel of the system' and 'related staff.' ").

■ Because district attorneys are "system and related personnel," but are not "personnel of the unified judicial system," it follows that they are "related staff." "Related staff" expressly are not "personnel of the system." *A fortiori*, such staff cannot be personnel or entities or offices of the unified judicial system. Rather, "related staff" are "those whose function aids the judicial process but who are not supervised by the courts." *Id.* Under the plain language of the RTKL, the Judicial Code, and the Rules of Judicial Administration, district attorneys (like public defenders, sheriffs, and others identified as "system and related personnel") are not "judicial agencies." Accordingly, Parks Miller cannot invoke the protections for judicial agencies provided by the RTKL.

It appears that the inclusion of district attorneys (among others) within the category of "system and related personnel" was undertaken for limited administrative purposes. *See, e.g.*, 42 Pa.C.S. § 3502 (permitting governing authorities to establish accounting methods to be used in connection with funds handled by system and related personnel); *id.* § 3544 (requiring political subdivisions to pay for the salaries of system and related personnel); *id.* § 4101 (requiring the coordination of activities between, *inter alia*, courts, system and related personnel, and political subdivisions to avoid duplicating functions); *see also* Pa.R.J.A. 505(11) (providing that the administrative office has the power to supervise administrative matters relating to system and related personnel); Pa.R.J.A. 506 (requiring all system and related personnel to comply with directives from the administrative office).

The inclusion of district attorneys within the definition of "system and related personnel" in the Judicial Code and Rules of Judicial Administration does not transform district attorneys into members of the uni-

---

**6.** The Rules of Judicial Administration define "[s]ystem and related personnel" as follows:

> Personnel of the system and related staff. The term includes district attorneys, public defenders, sheriffs and other officers serving process or enforcing orders, registers of wills, prothonotaries, excluding prothonota-

ries of the Supreme Court, Superior Court and the Commonwealth Court of Pennsylvania, clerks of the courts, clerks of the orphans' court division, prison and correctional officials, and the personnel of all of the foregoing.

Pa.R.J.A. 102.

fied judicial system.[7] For this reason, we conclude that Parks Miller and her office are not "judicial agencies" under the RTKL. The decision of the Commonwealth Court is affirmed.

Chief Justice Saylor and Justices Baer, Todd and Mundy join the opinion.

Justice Donohue files a concurring opinion in which Justice Dougherty joins.

## CONCURRING OPINION

### JUSTICE DONOHUE

I agree with the Majority's conclusion that a district attorney's office is not a "judicial agency" for purposes of Pennsylvania's Right-to-Know Law, 65 P.S. §§ 67.101–67.3104 ("RTKL"). I do not agree, however, with the Majority's use of definitions taken from the Judicial Code and the Pennsylvania Rules of Judicial Administration ("PRJA") in its attempt to define the term "judicial agency." Contrary to basic principles of statutory interpretation, the Majority ignores the clear language of the Judicial Code and the PRJA with respect to the express limitations on the use of the definitions set forth therein. Moreover, the Majority offers no basis for concluding that the General Assembly intended for these definitions to apply when construing terms in the RTKL.

By their clear language, the Judicial Code and the PRJA reflect that the definitions contained therein are intended to apply only to the defined terms contained in those statutes and rules. See 42 Pa.C.S. § 102 ("The following words and phrases **when used in this title** shall have, unless the context clearly indicates otherwise, the

---

7. Justice Donohue would eschew an approach that examines the definitions provided either in the Judicial Code or in the Rules of Judicial Administration, opining that the definitions provided therein apply, respectively, only to that title and those rules. Concurring Opinion at 1170–71. However, courts routinely invoke the definitions provided in the Judicial Code and the Rules of Judicial Administration to aid in interpreting other statutes with undefined terms, including the RTKL. *See, e.g., HSP Gaming, L.P. v. City Council for City of Phila.,* 595 Pa. 508, 939 A.2d 273, 280 n.9 (2007) (defining a final order for purposes of the Gaming Act, 4 Pa.C.S. § 1506, by reference to the Judicial Code's definitions, 42 Pa.C.S. § 102); *Bray v. McKeesport Housing Auth.,* 114 A.3d 442, 446 n.5 (Pa. Cmwlth. 2015) (defining housing authority as a local agency for purposes of the Local Agency Law, 2 Pa.C.S. § 752, by turning to the definition of "Commonwealth government" in the Judicial Code, 42 Pa.C.S. § 102); *Frazier v. Phila. Cnty. Office of Prothonotary,* 58 A.3d 858, 859 (Pa. Cmwlth. 2012) (defining "unified judicial system" in Section 102 of the Right to Know Law, 65 P.S. § 67.102, by relying upon the definitions provided in the Rules of Judicial Administration, Pa.R.J.A. 102); *Court of Common Pleas of Lackawanna Cnty. v. Pennsylvania Office of Open Records,* 2 A.3d 810 (Pa.

Cmwlth. 2010) (holding that the Director of the Office of Domestic Relations was a judicial agency pursuant to the RTKL because the director was "administrative staff" of the unified judicial system as defined in the Judicial Code, 42 Pa.C.S. § 102). This is a reasonable and intuitive approach, particularly inasmuch as the General Assembly has defined "judicial agency" in the RTKL as an "entity or office of the unified judicial system," 65 P.S. § 67.102, a term that is precisely defined in the Judicial Code and our Rules of Judicial Administration.

Unlike *In re 2003 Gen. Election for Office of Prothonotary,* 578 Pa. 3, 849 A.2d 230 (2004), upon which Justice Donohue relies, Concurring Opinion at 1171–72, this is a case where we are left with no other source for determining the meaning of the undefined statutory term. Although our Constitution identifies the courts that comprise the "unified judicial system," *see* PA. CONST. art. V, § 1, it says nothing about what other entities or offices may be included in that system. Under such circumstances, nothing precludes a court from considering the definitions provided in the Judicial Code or in our Rules of Judicial Administration, even where these definitions are not binding pursuant to the instructions of the Judicial Code and our rules.

meanings given to them in this section. . . .") (emphasis added); Pa.R.J.A. 102 ("The following words and phrases, **when used in these rules** shall have, unless the context clearly indicates otherwise, the meanings given them in this rule. . . .") (emphasis added). The Statutory Construction Act plainly instructs that when the words of a statute are unambiguous, we may not disregard "the letter of it" and must instead follow the explicitly stated legislative intent. 1 Pa.C.S. § 1921(a)-(b). The Judicial Code's above-quoted language ("when used in this title") is unambiguous, and must be followed as written. The same is true of the relevant language that this Court decided to use ("when used in these rules") when we promulgated the PRJA.

This Court explained the proper application of the Statutory Construction Act with respect to statutory definitions in *In re 2003 Gen. Election for Office of Prothonotary*, 578 Pa. 3, 849 A.2d 230 (2004). This Court was required to interpret the word "verified" as used in section 1701 of the Election Code, pursuant to which a trial court will open a ballot box and order a counting of the ballots if three qualified electors file "a petition duly **verified** by them" alleging fraud or other computation error. 25 P.S. § 3261(a) (emphasis added). The Commonwealth Court looked to the definitions of "verified" in the Judicial Code and the Rules of Civil Procedure, and applied them to the disputed term in the Election Code. This Court reversed, emphasizing that **"definitions . . . in the Judicial Code and the Rules of Civil Procedure are only meant to apply to those statutory provisions or rules promulgated, respectively, as part of the Judicial Code or Rules of Civil Procedure."** *In re 2003 Gen. Election,* 849 A.2d at 237 (emphasis added). Instead, this Court employed the definition of "verified" in section 1991 of the Statutory Construction Act, as that provision held that the definitions set forth therein could be used "in any statute finally enacted on or after September 1, 1937." *Id.* at 238 (citing 1 Pa.C.S. § 1991).

Furthermore, the Majority offers no sound basis for its apparent (but unexpressed) conclusion that the General Assembly, when enacting the RTKL, had any legislative intent to "borrow" definitions from either the Judicial Code or the PRJA to provide guidance on the meaning of terms used in the RTKL. There is no indication, in either the Judicial Code, the PRJA or the RTKL, that the General Assembly, in drafting the RTKL, intended for these definitions to be consulted to define terms in the RTKL. Instead, the Majority notes only that the use of the phrase "unified judicial system," which is used in the definition of "judicial agency" in section 102 of the RTKL, is defined in the Judicial Code and the PRJA. *Id.* at 12. This coincidence does not equate with a legislative intent to use that definition when interpreting the RTKL. If we were left with no other source for the meaning of the phrase, the Majority might be justified, as a last resort, in relying on the Judicial Code and our rules.[1] The definition of "unified judicial system" urged by

---

1. In *Commonwealth v. Fithian*, 599 Pa. 180, 961 A.2d 66 (2008), this Court looked to the definition of "judicial district" in the Judicial Code when construing the phrase "within the same judicial district" in Pennsylvania's compulsory joinder rule, 18 Pa.C.S. § 110. *Fithian*, 961 A.2d at 71. The Judicial Code defines a "judicial district" as a "district established by section 901" of the Judicial Code. 42 Pa. C.S. § 102. Far different from the present case, section 901 constitutes the best, and perhaps only, authoritative source for the term "judicial district," as in that provision the General Assembly **created** Pennsylvania's sixty judicial districts, in accordance with the legislative authority to do so granted under Article V, Section 11 of the Pennsylvania Constitution. Pa. Const. art. V, § 11.

Parks Miller, however, can be analyzed by reference to the RTKL itself and principles of statutory interpretation set forth in the Statutory Construction Act. Such analysis leads to the inescapable conclusion that the interpretation urged by Parks Miller is not supported by the language of the RTKL and also leads to an absurd and unreasonable result not intended by the General Assembly.

While the Commonwealth Court has borrowed the definitions in the Judicial Code and the PRJA to aid in the interpretation of the RTKL and other statutes,[2] this Court has never blessed this interpretive mechanism. As indicated above, this practice directly violates the Statutory Construction Act, as the unambiguous language of both the Judicial Code and the PRJA instruct that the definitions set forth apply only to terms set forth therein. 42 Pa.C.S. § 102; Pa.R.J.A. 102. My concern with the Majority's disregard for this unambiguous instruction goes beyond the confines of this case. As demonstrated by

my interpretive analysis herein, the outcome in this appeal is the same without the Majority's fallback to the tainted definition sources. However, the Majority is signaling the acceptability of ignoring clear statutory interpretative direction, which in a future case may render a contradictory result. I will admit that the Majority's approach is more convenient than analyzing the statute we are asked to interpret, but convenience and ease should not trump the express language of a statute or rule.

I would apply straightforward principles of statutory interpretation to discern the intent of the legislature as to the disclosure requirement for district attorneys. Parks Miller claims placement under the RTKL as a "judicial agency," which is defined as "[a] court of the Commonwealth or any office or entity of the unified judicial system." 65 P.S. § 67.102. Parks Miller does not contend that her office is a court of the Commonwealth. Instead, she insists that her office is "an entity or office of the Unified Judicial System."[3] Parks Miller's

2. *Bray v. McKeesport Hous. Auth.*, 114 A.3d 442, 446 n.5 (Pa. Commw. 2015) (defining a housing authority as a "local agency" for purposes of the Local Agency Law, 2 Pa.C.S. § 752, by reference to the definition of "Commonwealth government" in the Judicial Code); *Frazier v. Phila. Cnty. Office of Prothonotary*, 58 A.3d 858, 859–60 (Pa. Commw. 2012) (defining "unified judicial system" in the definition of "judicial agency" under the (continued...) RTKL by reference to the definition in the Judicial Code); *Court of Common Pleas of Lackawanna Cnty. v. Pa. Office of Open Records*, 2 A.3d 810, 813 & n.6 (Pa. Commw. 2010) (holding that the director of the office of domestic relations of a court of common pleas was "administrative staff" of the court and thus a "judicial agency" under the RTKL). It is notable that the Commonwealth Court borrowed the definitions without a hint of recognition of the prohibition in Judicial Code and the PRJA against doing so.

3. As an alternative argument, Parks Miller contends that we should recognize her office as a "judicial agency" under the RTKL be-

cause she and her office "operate almost exclusively within the confines of the court system" and thus are "part of a 'team' comprised of judges, court staff, lawyers, clerks, etc. that, taken as a whole, serve the 'unified judicial system.'" Parks Miller's Brief at 24. As part of this "team," Parks Miller insists that her office "becomes part of the greater 'system' of justice, not as a member of the 'judiciary,' but as an indispensable entity or office that serves the whole system, which this Court calls 'the unified judicial system.'" *Id.* at 25.

I reject out-of-hand Parks Miller's notion that district attorneys and the judiciary are on the same "team." It dangerously conflates those charged with asserting and prosecuting criminal charges on behalf of the citizens of this Commonwealth, i.e., district attorneys, with those charged with overseeing and adjudicating those charges through the impartial administration of justice, i.e., the judiciary. Parks Miller's highly generalized view of the unified judicial system misconstrues the role of district attorneys in our constitutional system.

Brief at 12. The phrase "an entity or office" is not defined in the RTKL but the Pennsylvania Constitution makes clear beyond question that the unified judicial system is captured by Article V ("The Judiciary").

We need not grapple with the precise parameters of the phrase "entity or office" as used in the RTKL since in her brief filed with this Court, Parks Miller correctly identifies herself, in the context of our Constitution, as an **"executive branch official."** Parks Miller's Brief at 24 (emphasis added). As a result, under the RTKL, Parks Miller is not a "judicial agency" but rather is a "Commonwealth agency," which the RTKL defines as "[a]ny office ... of the executive branch." 65 P.S. § 67.102. The RTKL's definition of "Commonwealth agency" makes clear that " 'Commonwealth agency' and "judicial agency" are mutually exclusive terms under the RTKL, as a 'Commonwealth agency' ... does not include a judicial or legislative agency." *Id.* Unlike a judicial agency, for which the disclosure requirements under the RTKL are limited to the production of financial records, 65 P.S. § 67.304, all records in the possession of a Commonwealth agency are presumed to be public records available for access in response to a RTKL request (absent a statutory exception, privilege, or other law, regulation or court order). 65 P.S. §§ 67.301, 67.305, 67.701. By her own admission, Parks Miller is a Commonwealth agency and thus not entitled to the limited disclosure requirements under the RTKL reserved only for judicial agencies.

Moreover, any ambiguity in the RTKL's definition of "judicial agency" as including "an entity or office of the Unified Judicial System," is clarified by the application of basic principles of statutory interpretation. For present purposes, the relevant principles under the Statutory Construction Act to interpret ambiguous terms include the requirement that we must presume that the General Assembly "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). Likewise, we must presume that the General Assembly "does not intend to violate the Constitution of the United States or of this Commonwealth." 1 Pa.C.S. § 1922(3).

First, an interpretation that district attorneys and their offices are "judicial agencies," thereby limiting disclosure under the RTKL to financial records, would result in an absurd and unreasonable result plainly not intended by the General Assembly. Under Article IV of the Pennsylvania Constitution ("The Executive"), the Governor, as the head of the executive branch of government, is tasked with the duty to "take care that the laws be faithfully executed," and the Attorney General is the "chief law officer of the Commonwealth." Pa. Const. art. IV, §§ 2, 4.1. Within this constitutional structure, this Court has stressed that district attorneys' basic function, like the Attorney General's, is the enforcement of the Commonwealth's penal laws:

> Prior to 1850, investigation and prosecution of criminal offenses in Pennsylvania were exclusively the duty of the Attorney General of the Commonwealth, although in practice he delegated this duty by appointing deputy attorneys general for the several counties. *See Commonwealth ex rel. Specter v. Freed,* [424 Pa. 508, 228 A.2d 382, 383–84 (Pa. 1967)]. In 1850 the General Assembly enacted legislation which provided for the election of these deputy attorneys general. The successor to that statute presently provides, in relevant part, that "(t)he district attorney shall ... conduct in court all criminal and other prosecutions, in the name of the Commonwealth ... and perform all the duties which, prior to May 3, 1850, were performed by deputy attorneys general.' Act of July 5,

1957, P.L. 484, s 1, 16 P.S. s 1402(a)[4] (Supp. 1969). If this statute means anything at all, it means that district attorneys in this Commonwealth have the power—and the duty—to represent the Commonwealth's interests in the enforcement of its criminal laws

*Com. ex rel. Specter v. Bauer*, 437 Pa. 37, 261 A.2d 573, 575 (1970) (footnote added); *see also Chalfin v. Specter*, 426 Pa. 464, 233 A.2d 562, 565 (1967) (stating that prosecutorial "powers, functions, [and] duties" involve prosecution of crimes committed).

In addition to section 1402(a) of the County Code specifically referenced by this Court in *Bauer*, the General Assembly has subsequently enacted the Commonwealth Attorneys Act, 71 P.S. §§ 732–101–732–506. Section 206(a) provides, in relevant part, that the "Attorney General shall be the chief law enforcement officer of the Commonwealth; the district attorney shall be the chief law enforcement officer for the county in which he is elected." 71 P.S. § 732–206(a); *see also Pennsylvania Gamefowl Breeders Ass'n v. Com.*, 122 Pa. Cmwlth. 52, 551 A.2d 361, 363 (1988) ("District attorneys are charged with conducting criminal prosecutions in the name of the Commonwealth, but only in the county in which the district attorney is elected.") (emphasis omitted). Moreover, Article IX, Section 4 of the Constitution identifies district attorneys as "county officials." Pa. Const. art. IX, § 4. As such, both as a matter of constitutional and statutory law, the Attorney General and district attorneys serve the same governmental function (law enforcement) as geographical counterparts: the Attorney General is the chief law enforcement officer at the state level while district attorneys are the chief law enforcement officers at the local (county) level.

Based upon this understanding of the role of district attorneys in Pennsylvania's constitutional scheme, district attorneys and their offices are clearly not "judicial agencies," as such an interpretation would constitute an absurd and unreasonable result plainly not intended by the General Assembly. Section 102 of the RTKL expressly names the office of the Attorney General as a "Commonwealth agency," 65 P.S. § 67.102, and, as noted above, section 305 provides that all records in the possession of a Commonwealth agency are presumed to be public records available for access in response to a RTKL request (absent a statutory exception, privilege, or other law, regulation or court order). 65 P.S. §§ 67.301, 67.305, 67.701. Accordingly, if this Court were to interpret the RTKL's definition of "judicial agency" to include district attorneys and their officers, then the chief law enforcement officer at the state level (the Attorney General) would be statutorily obligated to produce all public records in his or her possession, but the chief law enforcement officer at the local level (district attorneys) would have no corresponding statutory obligation to do so.

By imposing full disclosure responsibilities on the office of the Attorney General, the General Assembly plainly recognized that the overall goal of the RTKL, namely, to promote openness and afford citizens access to information concerning the activities of their government officials, extends to those constitutionally and statutorily charged with the sovereign function of enforcement of the Commonwealth's penal

---

4. Section 1402(a) of the County Code provides, in relevant part: "The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county for which he is elected, and perform all the duties which, prior to May 3, 1850, were performed by deputy attorneys general." 6 P.S. § 1402(a).

laws. If, however, as Parks Miller contends, district attorneys and their offices are "judicial agencies," then the RTKL's demand for open access to information would extend only to law enforcement officials at the state level but not, correspondingly, at the local level. Given the importance of the availability of public records relating to the practices of government officials in their interpretation and application of criminal statutes, such a result, which ignores entirely the parallel functions of the Attorney General and district attorneys, would be absurd and unreasonable.[5]

Second, because Parks Miller is a member of the executive branch, her preferred interpretation of "judicial agency" in the RTKL would constitute an unconstitutional violation of the separation of powers doctrine. This Court reaffirmed the basic principles of the separation of powers doctrine in *Jefferson Cty. Court Appointed Employees Ass'n v. Pa. Labor Relations Bd.*, 603 Pa. 482, 985 A.2d 697 (2009).

> This separation depends on two distinct concepts, as embraced by the framers of both the federal and Pennsylvania constitutions: (1) no branch may usurp a function belonging to another and each must operate within its own separate sphere of power; and (2) a system of checks and balances exists, which prevents one branch from acting unchecked. *See* [*Loving v. United States*, 517 U.S. 748, 757, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638, 642 (Pa. 1981) ]. The allocation of these powers among the three branches of government serves to avert the danger inherent in the concentration

of power in any single branch or body because "[t]he accumulation of all powers, legislative, executive, and judicial, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." *Beckert*, 439 A.2d at 642, citing The Federalist No. 47 (James Madison).

*Id.* at 706–07; *see also Beckert*, 439 A.2d at 642 ("A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government.... [N]o branch should exercise the functions exclusively committed to another branch.").

In *In Re Act 147 of 1990*, 528 Pa. 460, 598 A.2d 985 (1991), this Court held that the General Assembly violates the separation of powers doctrine if it attempts to place an official from one branch of our state government into another branch of our state government. In *Act 147*, the General Assembly enacted a statute (Act 147) that purported to amend the Judicial Code to place constables (whose function is law enforcement and thus makes them members of the executive branch) under the supervisory authority of this Court. This Court ruled that Act 147 was unconstitutional, explaining:

> As a peace officer, and as a process server, a constable belongs analytically to the executive branch of government, even though this job is obviously related to the courts. It is the constable's job to enforce the law and carry it out, just as the same is the job of district attorneys, sheriffs, and the police generally. Act 147 is unconstitutional and violates the separation of powers doctrine in our

---

5. In its amicus brief, the ACLU of Pennsylvania advises that the RTKL has been a critical tool in obtaining information about; and accountability for, decisions made by district attorneys. ACLU–PA Brief at 15. The ACLU–PA specifically references its dependence on

information relating to district attorneys' practices relating to the interpretation and application of criminal statutes, including the enforcement of civil asset forfeiture laws. *Id.* at 16 & nn.9–10.

Constitution because it attempts to place constables within the judicial branch of government and under the supervisory power of the judicial branch.... Personnel whose central functions and activities partake of exercising executive powers cannot be arbitrarily made part of another branch of government whose functions they do not perform.

*Id.* at 990 (citations omitted).

An interpretation of "judicial agency" under the RTKL that includes district attorneys and their offices as parts of the unified judicial system would violate the separation of powers doctrine, as it would constitute an attempt by the General Assembly to place members of the executive branch of government (district attorneys) within the judicial branch of government subject to this Court's general supervisory and administrative authority. This Court, however, has ruled that Pennsylvania courts have no power of review over the actions of the executive branch involving acts of discretion in the absence of bad faith, fraud, capricious action or abuse of power.[6] *Pennsylvania Social Services Local 668 v. Pennsylvania Labor Relations Board*, 481 Pa. 81, 392 A.2d 256 (1978) ("nor will [courts] inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution") (citing *United States v. Sanchez*, 908 F.2d 1443, 1445 (9th Cir. 1990) ("[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"); *see also Commonwealth v. Buonopane*, 410

Pa.Super. 215, 599 A.2d 681, 684 (1991) ("Not only did the trial court abuse its discretion in granting appellee's pretrial motion, it never had the discretion to determine whether the Commonwealth should have proceeded with the prosecution as a capital case in the first place.").

For these reasons, I concur in the Majority's decision to affirm the decision of the Commonwealth Court, but I cannot join in its reasoning.

Justice Dougherty joins this concurring opinion.

---

**6.** As such, I reject Parks Miller's contention that she and the attorneys working in her office are already subject to this Court's supervisory powers because they must abide by this Court's Rules of Professional Conduct and may be reported to the Disciplinary Board for any failures to do so. Parks Miller's

Brief at 22–23. Parks Miller fails to distinguish between this Court's authority to license and discipline all attorneys practicing law in this Commonwealth and our lack of supervisory power over the discretionary acts of prosecutors.